[No. A121665. First Dist., Div. Two. Aug. 24, 2009.]

JOHN DELOIS, Plaintiff and Appellant, v.
BARRETT BLOCK PARTNERS et al., Defendants and Appellants.

COUNSEL

Law Offices of Julian T. Lastowski and Julian T. Lastowski for Plaintiff and Appellant.

Zacks, Utrecht & Leadbetter, Andrew M. Zacks and James B. Kraus for Defendants and Appellants.

OPINION

HAERLE, J.—

## I.  INTRODUCTION

In 2006, a dispute arose between plaintiff John Delois, then a tenant of defendants' in a "live/work" space on Harrison Street in San Francisco, and defendants. The dispute, described in more detail below, was purportedly resolved by a written agreement between the parties. But various and sundry factors led to alleged breaches of that agreement; in any event, plaintiff did not vacate the premises on the date agreed upon in the settlement agreement and, as a result, defendants did not forgive the past due rent or return the security deposit as they would have done pursuant to that agreement.

After vacating the premises, plaintiff filed a 10-cause-of-action complaint against defendants alleging, e.g., various torts and breaches of contract regarding defendants' actions. Defendants countered with a SLAPP (strategic lawsuit against public participation) motion under Code of Civil Procedure section 425.16 (section 425.16) asking that all 10 causes of action be stricken. The trial court ruled that defendants had satisfied the first prong of that section as to all 10 causes of action, but not the second prong as to four of them. It thus struck six of plaintiff's causes of action (essentially tort causes of action), but declined to strike the remaining four (mainly contractual) causes of action. Defendants appeal the order insofar as it fails to strike three of the remaining four causes of action. (They concede that the trial court's order was correct as to respondent's first cause of action, which sought declaratory relief.)

Plaintiff cross-appeals from the order insofar as it struck six of his causes of action, contending that none of those claims satisfies the first prong of section 425.16. We agree with that contention and hence reverse the trial court's order.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

From 1995 to 2006, plaintiff was a tenant in a "live/work" space owned by defendant Barrett Block Partners, a limited partnership, at 743 Harrison Street in San Francisco. At that space, plaintiff operated a business known as "The Clay Studio." Defendant John Barrett (Barrett) is the general partner of the limited partnership.

Sometime in either 2000 or 2001, Caltrans (Department of Transportation) notified defendants that it intended to cut off access from the 743 Harrison building to Perry Street (a short street running parallel to Harrison Street apparently behind that building) in order to do a retrofit of part of the I-280 freeway. Defendants negotiated a monetary settlement for that cutoff and, at about the same time, agreed to reduce the rent plaintiff paid for his unit.

In 2004, defendants advised plaintiff that they had no immediate plans to alter the property and that he had been an "ideal tenant, and . . . could stay in the building as long as [he] wanted." As a result, plaintiff did not consider alternative spaces and anticipated a renewal of his lease in 2005. However, later in 2004, defendants decided to redevelop the property as condominiums, obtain the entitlements and permits needed to do so, and then sell the property. They did not advise plaintiff of these plans.

On or about June 3, 2005, defendant Barrett wrote to plaintiff regarding a new lease, the prior one having expired on February 28, 2005. He proposed a substantial increase in plaintiff's rent, i.e., to $7,200 per month. Plaintiff countered with a proposal of a lesser increase, and an oral agreement was reached that plaintiff's rent would be $5,033 per month from October 2005 until October 2006. Plaintiff paid, and defendants apparently accepted, that amount of rent starting in October 2005.

In early 2006, plaintiff learned of a San Francisco Planning Commission hearing on defendants' proposed project to transform the property into a condominium complex to be known as "Gardens at Harrison Street." He attended that hearing on February 16, 2006, with a group opposing the change, and believed that Barrett saw him there. At that hearing, the operation of "The Clay Studio" on the premises was specifically mentioned several times by speakers protesting the proposed zoning change. Plaintiff later wrote a letter to the planning commission opposing the proposed change.

After that hearing, plaintiff received a notice from defendants increasing his rent to $8,900 per month. On July 19, 2006, defendants served him with a "Three Day Notice to Pay Rent or Quit." That notice advised that, if plaintiff did not quit the premises, defendants would "commence legal proceedings against [him]."

Plaintiff paid the requested $8,900 rental amount for the month of July 2006 and the parties commenced negotiations to resolve their dispute. In August 2006, they executed a "Tenancy Termination Agreement" requiring plaintiff to vacate his "live/work" space by November 1, 2006, and leave the premises in "broom clean condition." In consideration of that, defendants promised to (1) return plaintiff's security deposit, (2) require plaintiff "to pay only $5033.00 per month on the first of each month until he vacates" with the balance of the set rate of $8,900 to be "waived if the Tenant vacates on or before the Termination Date and meets all other obligation [sic] of this Agreement."

On August 9, 2006, defendants also executed a "To Whom It May Concern" letter stating that plaintiff had "paid his rent on time" since becoming a tenant in March 1995.

Plaintiff did, in fact, move out, but a "couple of days" after the agreed-upon November 1, 2006, date. This delay was at least partially because Caltrans was blocking the loading doors in the back of the property and the front door was too small. Additionally, Barrett allegedly refused to allow plaintiff an additional couple of days' occupancy at a per diem rate. Per defendants in a letter to plaintiff on December 15, 2006, plaintiff did not leave the premises in "broom clean condition."[1] More significantly, defendants enforced their monetary remedies under that agreement, and charged plaintiff the full $8,900 rent for the interim months and did not refund his security deposit. As of December 15, 2006, defendants claimed plaintiff owed them slightly under $15,000.

Plaintiff filed his 10-cause-of-action complaint on October 30, 2007. In it, his principal charging allegations were that (1) he was "forced to vacate the residential unit . . . in violation of the provisions of the San Francisco Residential Rent Stabilization and Arbitration Ordinance," (2) "as a result of the false promises and misrepresentations of Defendants," he had "entered into a void contract relating to said premises," (3) defendants had "made false representations that the building was going to be demolished and that permits had been obtained, that Plaintiff would have money returned to him, and that Defendants would cooperate in allowing Plaintiff to vacate the premises, and [(4)] all of this was motivated by defendants' "illwill [sic], with the desire to trick Plaintiff and to harm him for LANDLORD'S pecuniary advantage and out of spite."

---

[1] However, in their opening brief to us, defendants concede that "[m]ost, but not all, of the material left behind had been put there by [defendants], their contractors, or the prior tenant. However, Plaintiff could have made an exception for this material in the settlement agreement, but did not."

As noted, there followed 10 causes of action for, respectively, declaratory relief, misrepresentation, breach of contract, conversion, unfair business practices (under Bus. & Prof. Code, §§ 17200 & 17500), unjust enrichment, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, constructive trust, and violation of the San Francisco Residential Rent Stabilization and Arbitration Ordinance (S.F. Admin. Code, ch. 37).

Defendants filed their section 425.16 motion on April 14, 2008. The trial court heard oral argument on it on May 6, 2008, after having issued a tentative ruling the previous day. It ruled that the first prong of the SLAPP motion regarding the nature of the claim had been sustained by defendants' moving papers as to all 10 causes of action, but that defendants had not sustained the second prong of the statute as to four of the 10 causes of action, i.e., failed to establish that plaintiff had not alleged and could not prove a prima facie case as to four causes of action, namely, those for declaratory relief, breach of contract, unjust enrichment, and breach of the covenant of good faith and fair dealing.

Defendants filed their notice of appeal on May 20, 2008; plaintiff cross-appealed on June 11, 2008, claiming that section 425.16 did not apply to any of his alleged causes of action.

## III. DISCUSSION

A trial court order either granting or denying a section 425.16 motion is appealable. (See § 425.16, subd. (j).) And "[w]hether section 425.16 applies and whether the plaintiff has shown a probability of prevailing are both reviewed independently on appeal." (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 [113 Cal.Rptr.2d 625], and cases cited therein; see also *Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 807 [119 Cal.Rptr.2d 108].)

■ Because of the large number of appellate decisions construing and applying section 425.16, we have many options from which to choose to summarize the key features of that law and the issues an appellate court must address in reviewing a case arising under it. Given that wide choice, we opt to quote from our own recent decision in *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467 [74 Cal.Rptr.3d 1] (*Feldman*): " 'A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. [Citation.]' [Citations.] [¶] Determination of a special motion to strike involves a two-part

inquiry. ' "First, the court decides whether the defendant . . . has made a threshold showing that the challenged cause of action is one arising from protected activity . . . . If the court finds such a showing has been made, it then determines whether the plaintiff [here the Feldman cross-complainants] has demonstrated a probability of prevailing on the claim." ' [Citation.] ' "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" [Citation.]' [Citation.] 'Thus, plaintiffs' burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment.' [Citation.] If the plaintiff fails to carry that burden, the cause of action is 'subject to being stricken under the statute.' [Citation.] [¶] . . . [¶] ▇ In determining whether . . . cross-defendants have satisfied their burden under the first prong of the section 425.16 analysis, 'the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.' [Citation.] ' "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." [Citation.]' [Citation.] Section 425.16 defines an ' "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue," ' to include statements or writings before a judicial proceeding, or any other official proceeding authorized by law and statements or writings made in connection with an issue under consideration or review by a judicial body. [Citations.] 'Thus, statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest. [Citations.]' [Citation.] Nor need defendants or cross-defendants bringing an anti-SLAPP motion prove the suit was intended to or actually did chill their speech. [Citations.]" (*Feldman, supra,* 160 Cal.App.4th. at pp. 1477–1478, fns. omitted.)

The issue we face here is, shortly and simply, whether plaintiff's 10-cause-of-action lawsuit satisfied the first prong of section 425.16, i.e., was it designed "to chill or punish [defendants'] exercise of constitutional rights to free speech and to petition the government for redress of grievances." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].)

To recapitulate the key facts noted above: Plaintiff rented the "live/work" space at 743 Harrison Street from defendants in 1995 and both resided and operated his "The Clay Studio" business there for over a decade. In 2004, defendants decided to undertake to redevelop the property into condominiums. However, according to the pleadings filed below by both parties,

apparently defendants never told their lessees, including plaintiff, about this. Indeed, in their opening brief to us, defendants do not assert—or even hint—that there was any such advice; rather, they state, citing plaintiff's declaration in the trial court, that they "told Plaintiff that [they] had no plans for the property" as of 2004. But, in fact, according to them, defendants "wanted to recover the Property in order to redevelop it as a mixed commercial/residential development."

In 2005, the parties attempted to negotiate a new lease for the premises; they were unsuccessful in those efforts, with the result that, in 2006, defendants served plaintiff with a three-day notice to quit. Importantly, however, no unlawful detainer action was ever filed by defendants; rather, what they repeatedly term a "settlement agreement," i.e., the Tenancy Termination Agreement, was negotiated between the parties and signed in August 2006. It required plaintiff to vacate the premises on or before November 1, 2006. Both sides agree that plaintiff was a "couple of days" late in vacating those premises, and defendants claim he also did not leave them in "broom clean" condition. However, and as noted earlier (see fn. 1, *ante*), defendants' own brief to us suggests that most, if not all, of the material left behind after plaintiff vacated the unit belonged to either defendants or others. In any event, as a result of plaintiff's late departure and alleged lack of a "broom clean" unit, defendants assessed him almost $15,000 and also did not return his rental deposit or other rent payable under the Tenancy Termination Agreement. Or, to put it as defendants do in their opening brief to us: "Plaintiff expected the consideration due to him under the agreement if he performed. Instead, Defendants enforced their rights for Plaintiff's breach." Thus, per defendants, it was the denial of "the consideration due [plaintiff] under the agreement" and defendants' enforcement of "their rights for [his] breach" which triggered plaintiff's October 2007 complaint.

The trial court found that these facts satisfied the first prong of section 425.16. It stated: "Defendants' anti-SLAPP motion is based on the contention that every claim Plaintiff brings arises from a settlement agreement that was entered into to avoid litigation . . . . [¶] Defendants correctly state that settlement agreements, being a part of the litigation process, are protected activity under CCP section 425.16. That includes 'communications preparatory or in anticipation of bringing an action.' [Citations.] The Court finds that defendants have met the first prong of Section 425.16."

■ We disagree with this analysis, because it runs contrary to both (1) authority concerning lawsuits designed to enforce agreements generally and (2) recent authority regarding the application of the SLAPP statute to landlord-tenant disputes. Those authorities establish that where, as here, no litigation is ever commenced—although possibly contemplated by one side or

another—but, rather, an agreement entered into to resolve the parties' disputes, a later suit alleging breach of that agreement and related tortious conduct *does not* constitute the sort of activity encompassed by the SLAPP statute's first prong.

A prime example of a case holding that actions intended to enforce "settlement agreements" does not come within the first prong of the SLAPP statute is *Applied Business Software, Inc. v. Pacific Mortgage Exchange, Inc.* (2008) 164 Cal.App.4th 1108 [79 Cal.Rptr.3d 849] (*Applied Business*). There, pending federal court litigation between a licensor and a licensee had been resolved in 2005 by a settlement agreement providing that the latter would cease using the former's software. Later that year and again in early 2006, the licensor's attorney wrote to the licensee demanding a certification that the licensee had returned all copies of the software to the licensor and was otherwise in compliance with the federal court litigation settlement agreement. When such was not forthcoming, the licensor filed suit in Los Angeles Superior Court alleging causes of action for breach of the settlement agreement and specific performance. The defendant-licensee filed a section 425.16 motion, alleging that the state court case was brought to retaliate against it and as a warning to defendant to keep silent about the licensor's business practices. In support of that motion, the licensee-defendant argued that "a suit alleging a breach of a settlement agreement . . . is necessarily a suit that involves an act in furtherance of a person's right of petition." (*Applied Business*, at p. 1115.) The licensee argued that the suit attacked protected activity, relying on language in *Navellier v. Sletten* (2002) 29 Cal.4th 82 [124 Cal.Rptr.2d 530, 52 P.3d 703].

The trial court denied the SLAPP motion and the appellate court affirmed, and did so in words relevant to defendants' arguments in this case regarding agreements in settlement of actual or anticipated litigation: "Here, the gist of plaintiff's complaint is not that defendant did something wrong by acts committed during the course of the underlying federal action, but rather that defendant did something wrong by breaching the settlement agreement after the underlying action had been concluded. Under the explanatory provisions in subdivision (e) of section 425.16, defendant's entering into the settlement agreement during the pendency of the federal case was indeed a protected activity, but defendant's subsequent alleged breach of the settlement agreement after the federal case was concluded is not protected activity *because it cannot be said that the alleged breaching activity was undertaken by defendant in furtherance of defendant's right of petition or free speech, as those rights are defined in section 425.16. Thus, the instant suit is based on alleged conduct of defendant that is not protected activity.*" (*Applied Business, supra*, 164 Cal.App.4th at p. 1118, some italics added.)

The same principle applies to the drafting and execution of an agreement before the relevant litigation commences. Thus, in *Moore v. Shaw* (2004) 116 Cal.App.4th 182, 194–197 [10 Cal.Rptr.3d 154], the same division of the Second District that decided *Applied Business* affirmed a trial court's order denying a SLAPP motion by an attorney who had drafted an agreement for the then trustee of a trust. That agreement effectively eliminated both the status of a previously designated successor trustee and the latter's financial benefits from the trust. The prior successor trustee sued the attorney for negligent and intentional breach of trust, and the attorney filed a SLAPP motion, asserting that her actions arose from her conduct in representing her clients, descendents of the trustor "and their exercise of the constitutional rights of freedom of speech and petition for redress of grievances in the context of the probate of" the estates of two decedents. (*Id.* at p. 190.) The court had no problem in rejecting this contention, stating that the attorney's conduct in drafting the termination agreement was not "an act in furtherance of the right of petition or free speech" and did not otherwise "arise from protected activity by her [but] arose from her drafting the termination agreement . . . well before the inception of any judicial proceedings." (*Id.* at pp. 195, 197.)

Recently, the same principle as to the limits of a "protected activity" under the SLAPP statute has been applied in landlord-tenant dispute cases, such as that before us. One of the most important of these cases is *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154 [64 Cal.Rptr.3d 488] (*Marlin*). There, after the landlords had served notice under the Ellis Act (Gov. Code, § 7060 et seq.) that they intended to withdraw certain rental units from the market, the tenants of some of those units brought a declaratory relief action to clarify their rights under that statute. The landlords filed an anti-SLAPP motion, contending that the tenants' complaint arose from the landlords' action in filing and serving the Ellis Act notices, and from other litigation involving the removal of the rental property from the market. The trial court granted the SLAPP motion, thereby striking the tenants' cause of action and dismissed their declaratory relief action.

The Court of Appeal disagreed with the trial court that the SLAPP motion was appropriate and reversed its order. After quoting the key language from section 425.16, subdivision (a), the court wrote: "Even if we assume filing and serving the Ellis Act notice and the notice to vacate constituted protected petitioning or free speech activity 'the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' Rather, the critical question in a SLAPP motion 'is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.' [¶] Defendants have fallen victim to the logical fallacy post hoc ergo propter hoc—because the notices

preceded plaintiffs' complaint the notices must have caused plaintiffs' complaint. The filing and service of the notices may have triggered plaintiffs' complaint and the notices may be evidence in support of plaintiffs' complaint, but they were not the cause of plaintiffs' complaint. Clearly, the cause of plaintiffs' complaint was defendants' allegedly wrongful reliance on the Ellis Act as their authority for terminating plaintiffs' tenancy. Terminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech." (*Marlin, supra,* 154 Cal.App.4th at pp. 160–161, fns. omitted.)[2]

In January 2009, perhaps the most pertinent of the appellate decisions discussing the application (or lack thereof) of the SLAPP statute to landlord-tenant disputes was published. It is *Clark v. Mazgani* (2009) 170 Cal.App.4th 1281 [89 Cal.Rptr.3d 24] (*Clark*). There, as here, a tenant sued her landlord for fraud and unlawful eviction after the landlord evicted her, allegedly to make the rental unit available to the landlord's daughter; the latter never happened. The trial court granted the landlord's SLAPP motion, holding that the tenant's complaint was essentially based on the landlord's privileged communications. Again, the Second District reversed. In so doing, it held that although "[t]here is no question that the prosecution of an unlawful detainer action is indisputably protected activity within the meaning of section 425.16," on the facts before it, the tenant's complaint was "not premised on Mazgani's protected activities of initiating or prosecuting the unlawful detainer action, but on her removal of the apartment from the rental market and fraudulent eviction of Clark for the purpose of installing a family member who never moved in." (*Clark, supra,* 170 Cal.App.4th at p. 1286.)

█ Quoting *Marlin,* the *Clark* court continued: " 'Terminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech.' [Citations.] ' "[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute." ' [Citation.] The pivotal question ' "is whether the cause of action is based on the defendant's protected free speech or petitioning activity." ' [Citation.]" (*Clark, supra,* 170 Cal.App.4th at pp. 1286–1287, italics omitted.)

The *Clark* court then discussed the facts and rulings of both *Marlin* and *DFEH* and held: "The same reasoning applies here. Clark's action against

---

[2] Other appellate decisions involving rental property disputes *not* triggering section 425.16 include *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, 1317–1319 [135 Cal.Rptr.2d 903], and *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1283–1288 [65 Cal.Rptr.3d 469] (*DFEH*).

Mazgani is not based on Mazgani's filing or service of the notices of intent to evict, it is not based on anything Mazgani said in court or a public proceeding, and it is not based on the fact that Mazgani prosecuted an unlawful detainer action against her. The complaint is based on Mazgani's allegedly unlawful eviction, in that she fraudulently invoked the [rent ordinance] to evict Clark from her rent-controlled apartment as a ruse to provide housing for her daughter, but never installed her daughter in the apartment as required by that ordinance, and also that she failed to pay Clark's relocation fee." (*Clark, supra*, 170 Cal.App.4th at p. 1288.)

Because the landlord in *Clark* relied on our decision (quoted above) in *Feldman* and also on *Birkner v. Lam* (2007) 156 Cal.App.4th 275 [67 Cal.Rptr.3d 190] (*Birkner*), the *Clark* court distinguished those cases: "In *Birkner*, tenants sued their landlord for wrongful eviction in violation of San Francisco's rent control ordinance, negligence, breach of the covenant of quiet enjoyment and intentional infliction of emotional distress. [Citation.] The sole basis for liability was the landlord's service of an eviction notice and his refusal to rescind it after the tenants informed him they were exempt from eviction based on age and length of tenancy. The court acknowledged the rule articulated in *Marlin*, that terminating a tenancy or removing a property from the rental market does not constitute an activity taken in furtherance of the constitutional right of petition or free speech. [Citation.] But, it found the circumstances of *Marlin* distinct. In *Marlin*, the tenants' claims were based on their contention that the landlord was not entitled to rely on the Ellis Act to evict them. In contrast, in *Birkner*, the gravamen of the complaint was the landlord's service of the eviction notice under the rent ordinance and his refusal to rescind it, activities indisputably protected under the anti-SLAPP statute. [Citation.] [¶] In *Feldman* [citation], tenants refused to vacate an apartment after the landlord demanded higher rent. The landlord filed an unlawful detainer action. The tenants filed a cross-complaint alleging retaliatory eviction, negligence, negligent misrepresentation, breach of the covenant of quiet enjoyment, wrongful eviction, breach of contract and unfair business practices. The unlawful detainer action was dismissed, and the landlord moved to strike the cross-complaint as a SLAPP suit. The Court of Appeal [i.e., this court] found that, with the exception of the claim of negligent misrepresentation, the tenants' cross-complaint was based on the filing of the unlawful detainer action, service of the notice to quit, and statements made by the landlord's agent in connection with the threatened unlawful detainer. Those activities were not merely evidence of the landlord's wrongdoing or activities which 'triggered' the filing of an action that arose out of some other independent activity. On the contrary, as was the case in *Birkner*, they were the challenged activities and the bases for all but one cause of action. [Citation.]" (*Clark, supra*, 170 Cal.App.4th at pp. 1288–1289, fn. & italics omitted.)

The *Clark* court then summed up the critical distinction between the facts before it and those before us in *Feldman* and the court in *Birkner*: "The pivotal distinction between the circumstances in *Marlin* . . . on one hand, and *Birkner* and *Feldman* on the other, is whether an actual or contemplated unlawful detainer action by a landlord (unquestionably a protected petitioning activity) merely 'preceded' or 'triggered' the tenant's lawsuit, or whether it was instead the 'basis' or 'cause' of that suit." (*Clark, supra,* 170 Cal.App.4th at p. 1289.)[3]

We believe the law just summarized mandates a reversal of the trial court's order in this case. As noted above, that court held that the defendant-landlords "have met the first prong of Section 425.16" because "settlement agreements, being a part of the litigation process, are protected activity under CCP section 425.16" and that such includes " 'communications preparatory or in anticipation of bringing an action.' " But plaintiff's action here did not challenge any "communications preparatory [to] or in anticipation of" a lawsuit. Rather, it challenged defendants' actions in allegedly breaching the Tenancy Termination Agreement the parties had entered into after plaintiff would not meet their new rental demands, demands allegedly made because of defendants' desire to convert their property into condominiums. It was also based on the landlords' failure to return plaintiff's rental deposit and other promised refunds, because he was a "couple of days" late in moving out of his unit and had not left it "broom clean"—apparently because of material still in the unit belonging to the landlords, their contractor, and an earlier tenant.

Defendants themselves concede that essentially this was the case via the last two sentences of the "Statement of Facts" section of their opening brief, which reads: "Plaintiff expected the consideration due to him under the agreement if he performed. Instead, Defendants enforced their rights for Plaintiff's breach." Nothing in that summary of the factual background of plaintiff's lawsuit suggests, even slightly, any "protected activity" by defendants.

---

[3] Meaning, of course, that in the latter circumstance the first prong is satisfied, but not in the former. Interestingly, this wording was quoted in a recent secondary discussion of when landlord-tenant litigation triggers the first prong of the SLAPP statute and when it does not. (See Miller & Starr, Real Estate NewsAlert (May 2009) New Cases: Landlord and Tenant.) Also, and prior to *Clark* and its discussion regarding what is and what is not "protected activity" under section 425.16 in landlord-tenant disputes, a related secondary authority summed up some of the other authority discussed above thusly: "The boundary line between what is and what is not, within the scope of the anti-SLAPP statute is not always predictably clear, and the courts are required to analyze each fact situation with detailed attention to whether the conduct called into question by the special motion was in furtherance of the right of free speech or petition." (7 Miller & Starr, Cal. Real Estate (3d ed. 2008–2009 Supp.) § 19:241, p. 21.)

Because almost none of the cases noted above were cited or discussed in the parties' original briefs to this court,[4] we asked for and received supplemental briefs from both. In their supplemental brief, defendants do not explicitly identify the "protected activity" they undertook prior to plaintiff's lawsuit, but we deduce from some of the language in that brief that they contend it consisted of "enforcement of an agreement entered into to avoid litigation" or a "communication to avoid litigation." But no case cited by them stands for the proposition that such does now, or ever has, constituted the requisite "protected activity."

For example, defendants contend that *Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 918 [20 Cal.Rptr.3d 385] (*Blanchard*) supports their position. However, in that case, the parties attacking the SLAPP motion *did not even contest* the applicability of the first prong of the statute. Nor could they, as the litigation involved a Business and Professions Code section 17200 lawsuit triggered by the defendants' sending of a demand letter "in advance of, or to avoid, litigation to vindicate its right not to have its programming pirated." (*Blanchard, supra*, 123 Cal.App.4th at p. 918.)

Defendants also cite *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 838 [36 Cal.Rptr.3d 385], for the proposition that "[s]ettlements of litigation are protected by the SLAPP statute." But, as noted above, the "Termination of Tenancy Agreement" *did not* settle any litigation. Finally, defendants' efforts to distinguish the cases discussed above and their passing references to other authorities are both quite unpersuasive.[5]

---

[4] Before oral argument, we cited many of these cases to counsel and suggested they be prepared to discuss them. At oral argument, counsel for defendants conceded that he was aware of those cases, but had opted not to discuss them in his briefs to us. We thus respectfully refer that counsel to this court's comments on that subject in *Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65, 82–83, footnote 9 [65 Cal.Rptr.3d 716].

[5] Other than *Feldman* and *Birkner*, defendants cite no landlord-tenant dispute cases even arguably to the contrary. For example, cases such as *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400 [103 Cal.Rptr.2d 174] (condominium owner sued an attorney who represented his tenants in unlawful detainer actions) and *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*) (owner of rental property sued a nonprofit provider of tenant counseling services) relied upon by them involved activity clearly protected under the anti-SLAPP statute, i.e., the filing of lawsuits. Appellants also cite—as did the trial court—*Flatley v. Mauro* (2006) 39 Cal.4th 299, 322 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*) as supporting the position that "settlement agreements, being part of the litigation process, are protected activity under CCP section 425.16." But all *Flatley* did is, in a footnote at the cited page, quote from *Briggs, supra*, 19 Cal.4th at page 1115, that " ' "communications preparatory to or in anticipation of bringing an action or other official proceeding" ' are protected by section 425.16." (*Flatley, supra*, 39 Cal.4th at p. 322, fn. 11.) But no such communication is cited or relied upon here by defendants. Finally, in their supplemental brief, defendants cite *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232 [63 Cal.Rptr.3d 398, 163 P.3d 89]. We are mystified by this citation, as that case had nothing whatsoever to do with the SLAPP statute. Rather, it addressed the extent to

In the present case, *there was no litigation commenced by the defendant-landlords*, not even an unlawful detainer action. The maximum they did to evict plaintiff was raise his rent and, when the two sides couldn't agree on a new rental agreement, serve him with a three-day notice to quit. A few weeks later, that notice was effectively superseded by the Tenancy Termination Agreement. This case is, therefore, much more akin to *Marlin* and *Clark*, in both of which the appellate courts found no relevant prior litigation or threats of litigation by the landlord before the tenant's lawsuit triggering the SLAPP motion. In our *Feldman* case, there *was* an unlawful detainer action filed by the landlords[6] and, in *Birkner*, both the service of a termination notice *and* the landlord's refusal to rescind that notice after the tenants advised him that they constituted a "protected household." (See *Birkner, supra,* 156 Cal.App.4th at pp. 283–284.)

Further, defendants' contention that, because plaintiff's lawsuit concerns a "settlement agreement" negotiated between the parties, a SLAPP motion is appropriate regarding an action alleging its breach is simply incorrect, as the *Allied Business* decision discussed above makes clear. In that case, the "settlement agreement" *actually settled litigation*; here, it did not, but only resolved—or attempted to resolve—a landlord-tenant dispute over the amount of rent payable. If the first prong of section 425.16 was not satisfied in *Applied Business*, it surely is not here. Put another way: an unsuccessful attempt by landlords to settle a dispute with a tenant does not constitute "protected activity" under the first prong of section 425.16.

■ For all the reasons discussed above, we hold that defendants' section 425.16 motion in the trial court did not, on the facts and pleadings of this case, satisfy the first prong of that statute and that, therefore, the trial court erred in granting it as to any of the causes of action in plaintiff's complaint. We therefore deny defendants' appeal and grant plaintiff's cross-appeal and reverse the trial court's order.

---

which a Santa Monica "Tenant Harassment" ordinance was preempted by the litigation privilege of Civil Code section 47, subdivision (b). (*Action Apartment,* at pp. 1241–1252.)

[6] In *Feldman* we held that, because of (1) the previous unlawful detainer action filed by the landlord and (2) various "threatening comments" made by the landlord's agent (*Feldman, supra,* 160 Cal.App.4th at p. 1474), most of the causes of action in the tenants' later action were subject to the SLAPP statute. However, and significantly, we held that such was not the case as to their cause of action for negligent misrepresentation. This was so, we concluded, because that cause of action "does not appear to be based upon the communications or communicative conduct covered by the litigation privilege." (*Id.* at p. 1493.) Just so here.

## IV. DISPOSITION

The order appealed from is reversed. Costs on appeal are awarded to plaintiff and appellant Delois.

Kline, P. J., and Richman, J., concurred.