Filed 12/5/13  Pickart v. Ben-Shahar CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| STEPHANIE PICKART, | B246826 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County<br>Super. Ct. No. SC117538) |
| ABI BEN-SHAHAR, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Norman P. Tarle, Judge.  Reversed and remanded with directions.

Rosario Perry and Rosario Perry for Plaintiff and Appellant.

Miller Barondess, Erik S. Syverson and Steven T. Gebelin for Defendant and Respondent.

* * * * * *

Plaintiff and appellant Stephanie Pickart filed a complaint against defendant and respondent Adi Ben-Shahar (Shahar), alleging causes of action for intentional and negligent infliction of emotional distress stemming from his alleged failure to vacate a rental property in accordance with a local ordinance. The trial court granted Shahar's special motion to strike the complaint pursuant to Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1] It ruled the complaint involved protected activity because Shahar's conduct in failing to vacate the property was related to a pending unlawful detainer action, and appellant failed to establish a probability of prevailing.

We reverse. Guided by *Clark v. Mazgani* (2009) 170 Cal.App.4th 1281, 1284 (*Clark*), "[w]e conclude [appellant's] claims did not arise from a protected activity—they are based on [Shahar's] violation of rent control laws, not on actions in furtherance of the right of free speech or petition."

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant and her husband Daniel Pickart (Pickart) purchased a unit located at 202 Bicknell Avenue in Santa Monica (Property) with the intent to relocate and reside there. Since 1989, Shahar had been a tenant at the Property. During his tenancy, he made improvements to the Property he valued at $225,000 and had an arrangement with the prior owner of the Property that he would be compensated for those improvements before leaving the Property.

The Property was subject to the Santa Monica Rent Control Charter Amendment (SMRCCA). According to section 1806(a)(8) of the SMRCCA, a housing provider may terminate a tenancy and obtain possession of the premises when he or she seeks to recover possession in good faith for his or her own use and occupancy or that of his or her children. On March 16, 2012, Pickart served Shahar with a 60-day notice to quit, indicating that he and appellant intended to occupy the Property in accordance with

---

[1] SLAPP is an acronym for strategic lawsuits against public participation. (*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1303, fn. 1.) Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

2

SMRCCA section 1806(a)(8). According to Pickart, approximately one week later, Shahar requested payment of $210,000 in order to vacate the premises.

When Shahar ultimately refused to vacate at the end of the 60-day period, appellant and Pickart found temporary housing and, on May 22, 2012, Pickart filed an unlawful detainer action against Shahar, alleging that he had failed to comply with the 60-day notice to quit. Shahar answered, denying the key allegations of the complaint. As an affirmative defense, Shahar conceded the Property was subject to the SMRCCA and alleged that Pickart had not acted in good faith because he was "not a bona fide 50% owner of the subject property," as he and his partners routinely bought properties for the purpose of refurbishing and reselling them. According to Shahar, his request for payment of over $200,000 occurred in an effort to resolve the unlawful detainer action.

On June 25, 2012, appellant filed a complaint against Shahar alleging causes of action for intentional and negligent infliction of emotional distress. She alleged that on March 12, 2012, she had served a 60-day notice to quit pursuant to SMRCCA section 1806(a)(8), requesting that Shahar vacate the premises. She further alleged that Shahar was aware of her family's plans to occupy the Property and knew of the actions they had undertaken to facilitate their occupancy. She alleged she had suffered and would continue to suffer emotional distress as a result of Shahar's failure to vacate the Property and was forced to seek temporary housing because Shahar did not comply with the 60-day notice. She further alleged that Shahar attempted to extort $210,000 from her by refusing to vacate unless he was paid such a sum.

Shahar filed a special motion to strike the complaint pursuant to section 425.16, asserting that appellant's claims arose out of acts in furtherance of his right to petition in a matter under consideration by a judicial body and that she could not demonstrate a probability of prevailing. As evidence in support of the motion, he offered his own declaration and pleadings in the unlawful detainer action.

Appellant opposed the motion, arguing her claims did not arise from protected activity and were unrelated to any defenses Shahar asserted in the unlawful detainer action. She further argued that even if her lawsuit arose out of protected activity, she

3

could establish a probability of prevailing.  She submitted her own declaration and Pickart's declaration.

While the motion was pending, the trial court in the unlawful detainer action ruled in favor of Pickart, finding no merit to Shahar's defenses.  The court found, however, that Shahar did not act maliciously.[2]

At the conclusion of an initial hearing on the motion, the trial court permitted supplemental briefing on a sentence in the trial court's tentative ruling granting the motion, which provided "defendant's failure to leave the apartment was conduct related to the impending [unlawful detainer] litigation."  Following a subsequent hearing, the trial court adopted its initial tentative ruling as its order.  The trial court ruled that Shahar's failure to vacate the Property within 60 days after the notice to quit and his attempt to "extort" $210,000 from appellant constituted pre-litigation activity protected by section 425.16.  Finding Shahar met his burden to show appellant's complaint involved protected activity, the trial court further ruled appellant failed to meet her burden to show a probability of success on the merits.  It ruled she failed to show Shahar engaged in extreme and outrageous conduct required for her cause of action for intentional infliction of emotional distress, and she failed to show a breach of duty sufficient to support her claim for negligent infliction of emotional distress.

This appeal followed.

### DISCUSSION

Appellant contends the trial court erred in concluding her claims arose from protected activity under section 425.16 and alternatively maintains she met her burden to show a probability of prevailing.  Because we agree with her first contention, we need not address the second.  (See *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102

---

**2**     The only evidence in the record of the ruling in the unlawful detainer action is a recitation in the trial court's ruling granting the motion to strike.  It appears the parties submitted additional evidence via requests for judicial notice that are not included in the record.

Cal.App.4th 1388, 1396 ["the plaintiff, however, has no obligation to demonstrate such probability of success if the defendant fails to meet the threshold burden"].)

## I.     The Anti-SLAPP Statute and the Standard of Review.

The anti-SLAPP statute is designed to curb "'lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' (§ 425.16, subd. (a); see *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 738–739.)" (*City of Alhambra v. D'Ausilio, supra,* 193 Cal.App.4th at p. 1305.) In relevant part, the statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The statute defines an act "'in furtherance of'" the right of petition or free speech to include "any written or oral statement or writing made before a . . . judicial proceeding"; "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body"; "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest"; or "any other conduct in furtherance of the exercise of the constitutional right of petition . . . of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(1)-(4).)

There are two components to a motion to strike brought under section 425.16. First, the moving defendant bears the burden of establishing the claim arises from the exercise of the constitutional right to free speech. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68.) Second, if the defendant satisfies that burden, the plaintiff bears the burden of showing there is a reasonable probability of prevailing on the merits of the claims. (§ 425.16, subd. (b)(1); *Zamos v. Stroud* (2004) 32 Cal.4th 958, 965; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.)

5

"We independently review the record to determine whether the asserted causes of action arise from the defendant's free speech or petitioning activity, and, if so, whether the plaintiff has shown a probability of prevailing. [Citations.] We consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' [Citations.]" (*City of Alhambra v. D'Ausilio, supra,* 193 Cal.App.4th at p. 1306; *Guessous v. Chrome Hearts, LLC* (2009) 179 Cal.App.4th 1177, 1183.) "We do not weigh the evidence; rather, we accept as true evidence favorable to [the plaintiff], and evaluate evidence favorable to the moving parties, to determine whether as a matter of law, it defeats [the plaintiff's] evidence. [Citations.]" (*Chodos v. Cole* (2012) 210 Cal.App.4th 692, 698–699.)

## II. Appellant's Claims Did Not Arise from Protected Activity.

"[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 78.) The "'arising from' requirement is not always easily met." (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 66.) "'[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. . . .' [Citation.]" (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477.) Stated another way, "[a] cause of action may be 'triggered by' or associated with a protected act, but it does not necessarily mean the cause of action *arises* from that act." (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537.) "'"[T]he [anti-SLAPP] statute's definitional focus is . . . [whether] the defendant's activity *giving rise to his or her asserted liability* . . . constitutes protected speech or petitioning. [Citation.]" . . .' [Citation.]" (*Id.* at p. 1538; see also *City of Cotati v. Cashman, supra,* at p. 77 ["California courts rightly have rejected the notion 'that a lawsuit is adequately shown to be one "arising from" an act in furtherance of the rights of petition or free speech as long

6

as suit was brought after the defendant engaged in such an act, whether or not the purported basis for the suit is that act itself'"].)

Moreover, "[i]t is 'the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute.' [Citation.]" (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 727.) "We assess the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.]" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272.) "If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute. [Citation.]" (*Ibid.*)

Here, appellant alleged in her complaint and she and Pickart averred in their declarations that Pickart served a 60-day notice to quit on Shahar in accordance with SMRCCA section 1806(a)(8), requesting that he vacate the Property so that appellant and her family could reside there. Approximately one week later, Shahar told Pickart he would vacate if appellant and Pickart paid him $210,000. Pickart refused, and Shahar did not vacate the Property. As a result of Shahar's refusal to move from the Property, appellant and her family moved into high-cost, temporary housing. Appellant contends she has suffered emotional distress and worries about the effect on her family of the displacement and lack of permanence associated with temporary housing. Shahar did not dispute appellant's evidence, but rather added information that he had made improvements to the Property at a value of approximately $225,000 and provided the complaint and answer in the unlawful detainer action.

In its order granting the motion, the trial court identified the two acts giving rise to the complaint: Shahar's "failure to vacate within 60 days after notice was given, and attempt to 'extort' $210,000 from Plaintiff and her husband." It then focused on the

7

relationship between Shahar's conduct and the unlawful detainer action: "The conduct at issue clearly occurred prior to the filing of the UD [unlawful detainer action]. The threshold issue, therefore, is whether the anti-SLAPP statute covers pre-litigation activity such as activity in connection with a 60-day notice to vacate. Pursuant to *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268, the answer is yes, pre-litigation notices and statements are covered. Additionally, per *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 963, this includes pre-litigation settlement discussions. Plaintiff argues the $210,000 demand was not a 'settlement offer' but was instead an 'extortion attempt.' However, *Seltzer v. Barnes* makes clear that even a bad faith settlement offer is covered by the statute. (*Id*. at 964–967.) [¶] Defendant's failure to leave the apartment was clearly conduct related to the impending UD litigation. His decision to make a settlement offer, even if in bad faith, is covered and protected conduct as well." Accordingly, the trial court ruled Shahar met his burden to show appellant's claims arose from protected activity, and proceeded to analyze whether appellant met her burden to establish a probability of success on the merits.

On the basis of the allegations and evidence, we conclude the trial court erred in characterizing Shahar's conduct as pre-litigation activity. Rather, we find applicable the numerous cases that have addressed anti-SLAPP motions in the context of landlord-tenant disputes. That authority unambiguously holds: "A complaint arising out of or based on the dispute or conduct underlying the unlawful detainer action is not subject to a special motion to strike." (*Copenbarger v. Morris Cerullo World Evangelism* (2013) 215 Cal.App.4th 1237, 1245.)

*Clark, supra*, 170 Cal.App.4th 1281, is "perhaps the most pertinent of the appellate decisions discussing the application (or lack thereof) of the SLAPP statute to landlord-tenant disputes . . . ." (*Delois v. Barrett Block Partners* (2009) 177 Cal.App.4th 940, 951.) In *Clark*, a landlord owned a rental unit subject to a local ordinance that restricted the bases for an eviction. The landlord filed an unlawful detainer action against a long-term tenant, and successfully evicted her to make the unit available to her own daughter—a permissible purpose for eviction under the ordinance. (*Clark, supra,* at

8

p. 1284.)  The tenant sued the landlord for fraud and unlawful eviction after the daughter failed to move in.  The trial court granted the landlord's special motion to strike, reasoning the tenant's complaint was essentially based on the landlord's privileged communications.  (*Id*. at p. 1285.)

The Court of Appeal reversed, finding the complaint did not arise from protected activity:  "There is no question that the prosecution of an unlawful detainer action is indisputably protected activity within the meaning of section 425.16.  [Citations.]  [¶] [The tenant's] complaint, however, is not premised on [the landlord's] protected activities of initiating or prosecuting the unlawful detainer action, but on her removal of the apartment from the rental market and fraudulent eviction of [the tenant] for the purpose of installing a family member who never moved in.  'Terminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech.'  [Citations.]  '"[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute."'  [Citations.]  The pivotal question '"is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity."'"  (*Clark, supra*, 170 Cal.App.4th at pp. 1286–1287.)  Further explaining why the complaint was not based on protected activity, the *Clark* court noted that the tenant's "action against [the landlord] is not based on [the landlord's] filing or service of the notices of intent to evict, it is not based on anything [the landlord] said in court or a public proceeding, and it is not based on the fact that [the landlord] prosecuted an unlawful detainer action against her.  The complaint is based on [the landlord's] allegedly unlawful eviction, in that she fraudulently invoked the [ordinance] to evict [the tenant] from her rent-controlled apartment as a ruse to provide housing for her daughter, but never installed her daughter in the apartment as required by that ordinance, and also that she failed to pay [the tenant's] relocation fee."  (*Id*. at p. 1288.)

The *Clark* court relied on a series of cases likewise involving landlord-tenant disputes, each of which concluded that the gravamen of the suit did not involve protected activity.  For example, in *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, a

9

landlord filed notices of intent to go out of business as permitted by a Government Code provision and local ordinance. The trial court granted the landlord's special motion to strike a declaratory relief complaint filed by tenants and the appellate court reversed, reasoning that while the filing and service of the notices may have triggered the tenants' complaint, the cause of the complaint was the landlord's allegedly wrongful reliance on the Government Code as authority permitting termination of the tenancies. (*Marlin v. Aimco Venezia, LLC, supra,* at pp. 160–161.) Moreover, evidence showing the complaint was "'intertwined'" with other litigation involving the landlord's right to evict failed to establish the complaint was based on protected activity. (*Id.* at p. 162.)

In another case cited by the *Clark* court, *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, the appellate court reversed an order granting a motion to strike a complaint filed by a city rent control board against property owners who allegedly created sham, short-term tenancies to avoid rent restrictions. The court explained that even though the property owners' tenancy creation involved administrative activity that could be characterized as exercise of the right of petition or free speech, they were not sued for such activity—they were sued to compel their compliance with the rent control law. (*Id.* at p. 1318.) The court elaborated: "Thus, while this suit may have been 'triggered by' defendants' submission of such documents to the Board, it is *not* true that this suit is *based on* the filing of such papers. Rather, the suit is based on activity that preceded the filing of the papers. *This suit is based on the Board's claim that defendants are charging an illegal rent for units A and C.* Not surprisingly, defendants have not presented any authority for the proposition that their conduct in charging illegal rent is an act in furtherance of their rights of petition or free speech. If we were to accept defendants' argument, then they could preclude any judicial review of their violation of the rent control law, no matter how egregious, by simply filing a SLAPP motion in response to any Board complaint. We are confident that the Legislature intended no such application of this statute." (*Ibid.*)

The *Clark* court also relied on *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, where the court

10

affirmed the denial of a motion to strike a complaint for disability discrimination brought by the Department of Fair Employment and Housing (DFEH) against a landlord who brought an unlawful detainer action to remove a tenant who asserted she had a qualifying disability that should have extended her tenancy. Again, the court reasoned that even though the landlord had engaged in petitioning activity in connection with the eviction, "the communications and the actual eviction itself were not the acts attacked in DFEH's complaint. Instead, the allegations of wrongdoing in DFEH's complaint arose from [the landlord's] alleged acts of failing to accommodate [the tenant's] disability. The letters, e-mail and filing of unlawful detainer actions constituted DFEH's *evidence* of [the landlord's] alleged disability discrimination. In other words, DFEH might well have filed the same lawsuit had [the landlord] simply ignored [the tenant's] claim of disability and requests for extension of her tenancy without any communication from it at all and simply filed a complaint for unlawful detainer." (*Id*. at pp. 1284–1285.)

Cases following *Clark* have similarly been careful to distinguish between conduct that merely precedes or even triggers protected activity and conduct that forms the basis or cause of a complaint. (See *Copenbarger v. Morris Cerullo World Evangelism, supra,* 215 Cal.App.4th at p. 1247 [reversing order granting motion to strike declaratory relief and breach of contract complaint, as the gravamen of the complaint was a dispute about rights and obligations under a lease, not the service of a three-day notice to quit and filing of an unlawful detainer action]; *Delois v. Barrett Block Partners, supra,* 177 Cal.App.4th at p. 953 [reversing order granting motion to strike tenant's complaint alleging multiple claims arising from landlord's alleged breach of tenancy termination agreement and failure to refund deposits, and rejecting trial court's characterization of termination agreements as communications preparatory to litigation].)

We find no basis to depart from *Clark* and its related authority. Shahar failed to meet his threshold burden of demonstrating that appellant's complaint arose from his constitutionally protected speech or petitioning activity. To paraphrase the concluding remarks in *Clark,* "[c]ontrary to h[is] contentions, [Shahar] was not sued for exercising constitutional rights. [H]e was sued to compel compliance with the provisions of the

11

[SMRCCA and for damages for emotional distress appellant allegedly suffered as a result of his noncompliance. Appellant's] suit was unquestionably 'triggered by' [Shahar's] statements and the documents []he filed in connection with the unlawful detainer. But the suit is *not based on* those statements or filings. It is based on [appellant's] claim that [Shahar wrongfully refused to vacate in violation of the SMRCCA and tried to extort money in exchange for vacating the Property. Shahar's] eviction notices and the unlawful detainer action are merely cited as evidence and background to illustrate [Shahar's] subsequent violation of the [SMRCCA]." (*Clark, supra,* 170 Cal.App.4th at pp. 1289–1290; accord, *Copenbarger v. Morris Cerullo World Evangelism, supra,* 215 Cal.App.4th at p. 1245.) Further, the court in *Delois v. Barrett Block Partners, supra,* 177 Cal.App.4th 940 squarely rejected Shahar's position that his request for payment of $210,000 was protected activity as a settlement offer. It held: "[A]n unsuccessful attempt by landlords to settle a dispute with a tenant does not constitute 'protected activity' under the first prong of section 425.16." (*Id.* at p. 955.)

In view of this authority, we do not find that Shahar's failure to vacate and request for payment constituted protected, pre-litigation activity. The cases cited by the trial court for this proposition are inapposite. (See *Seltzer v. Barnes, supra,* 182 Cal.App.4th at p. 963 [reversing denial of motion to strike tenant's complaint against attorney who represented homeowners association and settled an action against it brought by the tenant]; *Neville v. Chudacoff, supra,* 160 Cal.App.4th at p. 1268 [affirming grant of a motion to strike employee's defamation complaint against employer because evidence showed employer's statements were made in good faith contemplation of litigation].)

Nor are we persuaded that the evidence offered here is more akin to the circumstances in the cases distinguished by *Clark* and its progeny. (See *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1182–1183 [reversing denial of motion to strike wrongful eviction complaint where the alleged wrongdoing was the service of a three-day notice to quit and filing of an unlawful detainer action]; *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1483 [reversing partial denial of motion to strike cross-complaint brought by subtenants after dismissal of unlawful detainer action

12

because the cross-complaint was, "with one exception, based upon the filing of the unlawful detainer, service of the three-day notice, and . . . statements in connection with the threatened unlawful detainer"]; *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 283 [reversing denial of motion to strike tenants' complaint against landlord where "'[t]he sole basis for liability' in each of plaintiffs' causes of action 'was the service of a termination notice, pursuant to Rent Ordinance,' and [landlord's] 'refusal to rescind it after [p]laintiffs informed him that they constituted a protected household'"].) Unlike the situations in these three cases, appellant's causes of action do not arise from the filing of the unlawful detainer action. Indeed, appellant could have alleged the same claims whether or not Pickart had filed an unlawful detainer action.

Because appellant's causes of action did not arise from protected activity, the motion to strike brought pursuant to section 425.16 should have been denied.[3] Given that Shahar did not meet his threshold burden, the burden never shifted to appellant to demonstrate a probability of prevailing, and we therefore need not address whether she satisfied that burden. (See, e.g., *Smith v. Adventist Health System/West* (2010) 190 Cal.App.4th 40, 64.)

---

[3]    Had the trial court awarded attorney fees pursuant to section 425.16, subdivision (c), we would reverse that order as well. The trial court's minute order did not contain an attorney fee award. Instead, it directed counsel for Shahar to submit a proposed order. The only order in the record, however, is the minute order.

## DISPOSITION

The order granting Shahar's special motion to strike is reversed, and the matter is remanded with directions to the trial court to enter a new and different order denying the motion.  Appellant is entitled to her costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J. *
                  FERNS

We concur:



_____, P. J.
      BOREN



_____, J.
      ASHMANN-GERST

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.