Filed 1/29/14  Certified for publication 2/26/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOHN MORIARTY,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>LARAMAR MANAGEMENT<br>CORPORATION,<br><br>　　　　Defendant and Appellant. | A137608<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-12-520970) |

Another appeal in an anti-SLAPP case.  Another appeal by a defendant whose anti-SLAPP motion failed below.  Another appeal that, assuming it has no merit, will result in an inordinate delay of the plaintiff's case and cause him to incur more unnecessary attorney fees.  (See *Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 1002-1003.)  And no merit it has.  We thus affirm, concluding, as did the trial court, that plaintiff's lawsuit is not based on protected activity.

## BACKGROUND

### The Complaint

On May 21, 2012, John Moriarty filed a complaint naming four defendants: 2363 Van Ness Avenue, LLC; Laramar Management Corporation; Laramar Urban Specialty Partners; and Laramar SF Urban Apartments.  The complaint alleged 11 causes of action, styled as follows:  (1) harassment (violation of San Francisco Administrative Code § 37.10 B); (2) negligent violation of statutory duty/negligence per se; (3) breach of

1

implied warranty of habitability; (4) breach of the statutory warranty of habitability; (5) negligence/personal injury; (6) nuisance; (7) breach of the covenant of quiet enjoyment; (8) intentional infliction of emotional distress; (9) unlawful business practice; (10) negligent misrepresentation; and (11) wrongful eviction (violation of San Francisco Administrative Code § 37.9).

The complaint is 22 pages long, with 139 paragraphs. After the jurisdictional allegations and some boilerplate, the substance of Moriarty's claims begins with 45 paragraphs of "Factual Allegations," all of which would be incorporated in the causes of action that followed. That substance is as follows:

In 1994 Moriarty rented the premises at 2363 Van Ness Avenue, San Francisco, from defendants' predecessors in interest, and he was a tenant within the definition of the San Francisco Rent Ordinance (San Francisco Administrative Code, Chapter 37).

At various times throughout his tenancy Moriarty notified defendants and/or their predecessors of various maintenance and repair issues required at the premises, including for water intrusion at various locations. Most recently, Moriarty notified defendants of surface and airborne contaminants throughout the premises, airborne contaminants that were negatively impacting him and adversely affecting his health.

Defendants attempted to remediate the premises, which attempts were unsuccessful, after which defendants "notified [him] they were going to commence extensive repairs of the subject premises, . . . so [he] vacated the premises on or about September 2010." This was a temporary abandonment until repairs and remediation were conducted.

In June 2011, Moriarty "learned that Defendants had chosen to permanently retain possession of the subject premises and thereafter refused to return possession to [him] in violation of [his] rights." Defendants' conduct "was intended to, and in fact did, oust Plaintiff from the Premises," which conduct involved 15 specific wrongs by defendants, including failing to provide a habitable dwelling; failing to maintain and repair plumbing fixtures; allowing water intrusion and failing to rectify it; failing to repair multiple sources of water intrusion and remediate development of airborne contaminants; failing

2

to eliminate illness-causing airborne contaminants from the premises due to the persistent water intrusion, excessive dampness, and prolonged saturation of indoor building materials; permitting dilapidated and/or stained and peeling paint on walls and ceiling; and failing to provide operable and locking windows and doors which were watertight or weather proofed. And the result was that defendants failed to perform under the rental agreement in various ways, including that they "a. Breached the warranty of habitability by not making the needed repairs; [¶] b. Failed to maintain the Subject Premises in a safe and habitable condition; [and] [¶] c. Denied Plaintiff's peaceable quiet enjoyment of the Subject Premises."

Following all that, Moriarty alleged this:

"56. Defendants, and each of them, endeavored to recover possession of the Subject Premises in bad faith through unlawful harassment and other means, including but not limited to the following actions:

"a. Refusing to perform effective repairs of the severely dilapidated conditions which rendered the Subject Premises uninhabitable;

"b. Demanding rent while the Subject Premises was in a condition of severe dilapidation and disrepair;

"c. Seeking to force Plaintiff to vacate the Subject Premises by permitting the Subject Premises to fall into and/or remain in a condition that was substandard, untenantable and a threat to the health and safety of Plaintiff, and any occupants, in an effort to recover possession of the rent controlled unit.

"d. Seeking to coerce Plaintiff to not assert his legal right through intimidation, and harassment,

"e. Refusing to return possession of the Premises to Plaintiff after the completion of repairs and remediation."

All this caused Moriarty to "suffer severe physical, mental, and emotional pain, injury and distress, including, but not limited to, respiratory distress, nervousness, fatigue, embarrassment, humiliation, discomfort, exacerbation and annoyance . . . ."

3

The complaint was apparently served on only two of the named defendants: 2363 Van Ness Avenue LLC and Laramar Management Corporation.

## The Proceedings Below

On September 25, 2012, Laramar Management Corporation (hereafter, usually Laramar) filed a motion to strike pursuant to Code of Civil Procedure section 425.16 (section 425.16), the anti-SLAPP statute.[1] The motion was accompanied by a memorandum of points and authorities and the declaration of Laramar's attorney, Curtis P. Dowling. As pertinent here, Mr. Dowling's testimony was that in June 2011 he had filed an unlawful detainer action against Moriarty; that in July 2011, the court entered Moriarty's default; and that Moriarty's later motion to set aside the default was denied. Mr. Dowling's declaration had attached various exhibits, one of which was a complaint for unlawful detainer against Moriarty filed on behalf of Laramar Urban Specialty Partners.

The essence of Laramar's anti-SLAPP motion was, as distilled in its brief here, this: "Laramar argued that Plaintiff's complaint was premised in material part upon Laramar's alleged pursuit of the eviction action and the ensuing judgment for possession, that the eviction action and judgment were not 'merely incidental' to Plaintiff's claims, and that Plaintiff could not demonstrate a *prima facie* case against Laramar because his claims are barred by the litigation privilege under Civil Code § 47 and by the doctrines of claim and issue preclusion. [AA 30-49.]"

Moriarty filed opposition, along with objections to evidence. The motion came on for hearing on November 29, 2012, before the Honorable Ronald Quidachy, an experienced law and motion judge, who, following a hearing, denied Laramar's motion, concluding as follows: "The Court concludes that the Moving Parties failed to carry its burden to show that the Plaintiff's Complaint arises out of protected activity. [¶] We went through this Complaint in detail, trying to see how this might be protected activity. . . . [¶] The drafters of the Complaint did an excellent job in making sure that this

---

[1] Defendant 2363 Van Ness Avenue LLC filed an answer, and the lawsuit is apparently proceeding as to it.

4

basically is an action that arises—that arises out of alleged breach of warranty of habitability. And I couldn't find anything else in the complaint."

On December 5, 2012, Judge Quidachy entered his order denying the anti-SLAPP motion, from which Laramar filed a timely notice of appeal.

## DISCUSSION

A possible threshold issue presents itself, based on the fact that the plaintiff in the unlawful detainer case was, as noted, Laramar Urban Specialty Partners, while the moving party in the anti-SLAPP motion is Laramar Management Corp. Laramar anticipated this issue, and claims it is not one, in this footnote on page 1 of its opening brief: "Although the unlawful detainer action was filed by Laramar Urban Specialty Partners ('LUSP'), Plaintiff's Complaint alleges that both LUSP and Laramar Management Corporation acted as 'property managers' and were Plaintiff's 'landlords.' [Citation.] The Complaint alleges that only LUSP 'performed and/or supervised the negligent repair and remediation of the Subject Premises.' [Citation.] The Complaint further alleges in boilerplate fashion that there was a 'unity of interest' among the defendants and that the Defendants were 'alter egos' of each other and exerted control over each other, such that the separate existence of the Defendants should be disregarded. [Citation.] All causes of action are alleged against all Defendants. Laramar Management Corporation is entitled to assert its anti-SLAPP rights in this context. (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1184 (*Wallace*); *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 16-18.)"

Moriarty does not vigorously contest this assertion, replying late in his respondent's brief only as follows: "Defendant erroneously relies on *Wallace* and *Ludwig* for the proposition that Laramar can assert its anti-SLAPP rights, but these cases actually stand for the proposition that a defendant may claim protection under the anti-SLAPP statute even though he only supported, assisted, exhorted, or motivated another person who actually performed the act. [Citations.] Thus, Defendant effectively concedes that it supported, assisted, exhorted, or motivated another person who actually

5

performed the purported protected act. Therefore, Laramar's liability for the habitability defects at Premises and for wrongful endeavor to recover the Premises is established."

We do not understand Moriarty's argument to be that Laramar has no standing to make the anti-SLAPP motion here, despite that it was not involved in the earlier unlawful detainer action. Moriarty certainly did not make any such argument below. Thus, and because the issue is not fully developed in the briefing, we choose not to address it, and turn to the merits of Laramar's appeal.

**Anti-SLAPP Law and the Standard of Review**

We recently explained the operation of section 425.16, in both the trial and reviewing courts:

"Subdivision (b)(1) of section 425.16 provides that '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' Subdivision (e) elaborates the four types of acts within the ambit of a SLAPP, including, as pertinent here, '(4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.'

"A two-step process is used for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity, that is, by demonstrating that the facts underlying the plaintiff's complaint fit one of the categories spelled out in section 425.16, subdivision (e). If the court finds that such a showing has been made, it must then determine the second step, whether the plaintiff has demonstrated a probability of prevailing on the claim. [Citation.]

" 'The Legislature enacted section 425.16 to prevent and deter "lawsuits [referred to as SLAPP's] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).)

6

Because these meritless lawsuits seek to deplete "the defendant's energy" and drain "his or her resources" [citation], the Legislature sought " 'to prevent SLAPPs by ending them early and without great cost to the SLAPP target' " [citation].  Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation.'  [Citation.]

"Finally, and as subdivision (a) of section 425.16 expressly mandates, the section 'shall be construed broadly.'

"With these principles in mind, we turn to a review of the issues before us, a review that is de novo.  [Citation.]" (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 463-464.)

### Moriarty's Complaint Is Not Subject to the Anti-SLAPP Statute As It Is Not Based on Protected Activity

As indicated above, Judge Quidachy concluded that Laramar had failed to meet its burden under the first step of the anti-SLAPP analysis, failing to demonstrate that Moriarty's complaint was based on protected activity.  We reach the same conclusion.

Laramar's brief is correct in two respects.  First, prosecution of an unlawful detainer action is "indisputedly protected activity" within the meaning of the anti-SLAPP statute, as we ourselves have held.  (*Feldman v. 1100 Park Lane Association* (2008) 160 Cal.App.4th 1467, 1479, citing *Birkner v. Lam* (2007) 156 Cal.App.4th 275 (*Birkner*).)  Second, "Application of section 425.16 does not depend on the form or label of plaintiff's cause of action, but rather on 'the defendant's activity that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' "

But those principles, essentially black letter law, are unavailing here, as Laramar fails the most fundamental requirement—demonstrating that Moriarty's lawsuit is based on the unlawful detainer action.  It is not.

In order for a complaint to be within the anti-SLAPP statute, the "critical consideration . . . is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)  To make

7

that determination, we look to the "principal thrust or gravamen of the plaintiff's cause of action." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188; *Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1279.)

Laramar's brief on appeal essentially ignores all pertinent principles or cases, its brief nowhere mentioning "gravamen" or "thrust," or even attempting to meaningfully discuss what Moriarty's complaint is "based on." Rather Laramar states its argument this way:

"D. Plaintiff's Lawsuit Against Laramar is a SLAPP

"Plaintiff has attempted to disguise the fact that this action is a SLAPP, but it is a SLAPP nonetheless. The complaint sets forth numerous causes of action against all of the defendants, including a penultimate [*sic*] cause of action for 'Wrongful Eviction,' accusing the Defendants of a laundry-list of bad actions as landlords. However, the laundry list includes the filing and prosecution of the Unlawful Detainer Action that resulted in Plaintiff's eviction. In particular, the Complaint asserts the following conduct as the basis of Plaintiff's claims:

"45. In or after June of 2011, Plaintiff learned that Defendants had chosen to permanently retain possession of the subject premises and thereafter refused to return possession to Plaintiff in violation of Plaintiff's rights . . . .

"55. As a direct and proximate result of the above acts by Defendants . . . . Plaintiff lost possession of the Subject Premises and suffered loss of the Subject Premises to his general damage in an amount to be proven at trial. . . .

"56. Defendants . . . endeavored to recover possession of the Subject Premises in bad faith through unlawful harassment and other means, including but not limited to the following actions: . . . .

"e. Refusing to return possession of the Premises to Plaintiff after the completion of repairs and remediation. . . .

"70. Defendants violated their duty of due care to Plaintiff and violated their statutory duties to Plaintiff by failing to state just cause for the eviction of Plaintiff or

8

offer any relocation benefits as proscribed under San Francisco Administrative Code § 37.9C. . . .

"129. Defendants endeavored to recover, and in fact recovered, possession of the Premises in bad faith, with ulterior reason, and without honest intent, and in a manner not permitted by the San Francisco Administrative Code § 37 et seq. (Rent Ordinance) and thereby violated the Rent Ordinance § 37.9 et seq. . . .

"130. Defendants, and each of them, failed to provide Plaintiff just cause to evict her [*sic*] as required by the Rent Ordinance. Defendants' eviction of Plaintiff was lacking in the requisite just cause and was incapable of being remedied . . . .

"These allegations fall within the scope of section 425.16(e)(1) and (e)(2), because they expressly invoke the Unlawful Detainer Action and ensuing eviction as the factual basis for Plaintiff's claims against Laramar."

In short, with disregard of the pertinent principles or cases—and on a strained, myopic reading of Moriarty's complaint—Laramar focuses on a few words in a few paragraphs (of 139) and from there argues, however conclusorily, that the complaint is within the SLAPP statute. Laramar's primary focus in this regard is on the eleventh cause of action, as to which it asserts as follows:

"Plaintiff's tactics are shown by his penultimate [*sic*] Eleventh cause of action for 'Wrongful Eviction,' which explicitly seeks damages based on the Unlawful Detainer Action and resulting eviction. Plaintiff alleges:

"Defendants *endeavored to recover, and in fact recovered, possession of the Premises* in bad faith, with ulterior reason, and without honest intent, and in a manner not permitted by the San Francisco Administrative code § 37, *et seq.* ('Rent Ordinance') and thereby violated the Rent Ordinance § 37.9, *et seq.*

". . . . Plaintiff then alleges:

"Defendants, and each of them, failed to provide Plaintiff just cause to evict her [sic] as required by the Rent Ordinance. Defendants' eviction of Plaintiff was lacking in the requisite just cause and was incapable of being remedied as Plaintiff's tenancy was protected from eviction.

9

". . . . Plaintiff contends that he is entitled to treble damages because Laramar endeavored to recover possession of the rental unit in violation of Chapter 37.9 of the Rent Ordinance. [Citation.] . . . [¶] The eleventh cause of action clearly arises from protected petitioning conduct."

Laramar's selective reading of Moriarty's complaint is inappropriate, which is bad enough. Worse, the conclusion it draws from the eleventh cause of action is wrong, as shown by numerous cases, including some by us.

The issue presented by the eleventh cause of action is essentially whether an action for violation of rent ordinances is within the anti-SLAPP statute, an issue that most frequently presents itself in cases involving a claimed violation of the Ellis Act—cases held not to be within the anti-SLAPP law.

We examined the pertinent decisions on this point in *Delois v. Barrett Block Partners* (2009) 177 Cal.App.4th 940 (*Delois*), as follows:

"[In] *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, . . . after the landlords had served notice under the Ellis Act (Gov. Code, § 7060 et seq.) that they intended to withdraw certain rental units from the market, the tenants of some of those units brought a declaratory relief action to clarify their rights under that statute. The landlords filed an anti-SLAPP motion, contending that the tenants' complaint arose from the landlords' action in filing and serving the Ellis Act notices, and from other litigation involving the removal of the rental property from the market. The trial court granted the SLAPP motion, thereby striking the tenants' cause of action and dismissed their declaratory relief action.

"The Court of Appeal disagreed with the trial court that the SLAPP motion was appropriate and reversed its order. After quoting the key language from section 425.16, subdivision (a), the court wrote: 'Even if we assume filing and serving the Ellis Act notice and the notice to vacate constituted protected petitioning or free speech activity "the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute." Rather, the critical question in a SLAPP motion "is whether the cause of action is based on the

10

defendant's protected free speech or petitioning activity." [¶] Defendants have fallen victim to the logical fallacy post hoc ergo propter hoc—because the notices preceded plaintiffs' complaint the notices must have caused plaintiffs' complaint. The filing and service of the notices may have triggered plaintiffs' complaint and the notices may be evidence in support of plaintiffs' complaint, but they were not the cause of plaintiffs' complaint. Clearly, the cause of plaintiffs' complaint was defendants' allegedly wrongful reliance on the Ellis Act as their authority for terminating plaintiffs' tenancy. Terminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech.' (*Marlin, supra,* 154 Cal.App.4th at pp. 160-161, fns. omitted).

"In January 2009, perhaps the most pertinent of the appellate decisions discussing the application (or lack thereof) of the SLAPP statute to landlord-tenant disputes was published. It is *Clark v. Mazgani* (2009) 170 Cal.App.4th 1281 (*Clark*). There, as here, a tenant sued her landlord for fraud and unlawful eviction after the landlord evicted her, allegedly to make the rental unit available to the landlord's daughter; the latter never happened. The trial court granted the landlord's SLAPP motion, holding that the tenant's complaint was essentially based on the landlord's privileged communications. Again, the Second District reversed. In so doing, it held that although '[t]here is no question that the prosecution of an unlawful detainer action is indisputably protected activity within the meaning of section 425.16,' on the facts before it, the tenant's complaint was 'not premised on Mazgani's protected activities of initiating or prosecuting the unlawful detainer action, but on her removal of the apartment from the rental market and fraudulent eviction of Clark for the purpose of installing a family member who never moved in.' (*Clark, supra,* 170 Cal.App.4th at p. 1286.)

"Quoting *Marlin*, the *Clark* court continued: ' "Terminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech." [Citations.] " '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' " [Citation.] The pivotal

11

question " 'is whether the cause of action is based on the defendant's protected free speech or petitioning activity.' " [Citations.]' (*Clark, supra,* 170 Cal.App.4th at pp. 1286-1287, italics omitted.)

"The *Clark* court then discussed the facts and rulings of both *Marlin* and *DFEH [Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273] and held: 'The same reasoning applies here. Clark's action against Mazgani is not based on Mazgani's filing or service of the notices of intent to evict, it is not based on anything Mazgani said in court or a public proceeding, and it is not based on the fact that Mazgani prosecuted an unlawful detainer action against her. The complaint is based on Mazgani's allegedly unlawful eviction, in that she fraudulently invoked the [rent ordinance] to evict Clark from her rent-controlled apartment as a ruse to provide housing for her daughter, but never installed her daughter in the apartment as required by that ordinance, and also that she failed to pay Clark's relocation fee.' (*Clark, supra,* 170 Cal.App.4th at p. 1288.)

"Because the landlord in *Clark* relied on our decision . . . in *Feldman* [*v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467] and also on *Birkner, supra,* 156 Cal.App.4th 275, the *Clark* court distinguished those cases . . . .

"The *Clark* court then summed up the critical distinction between the facts before it and those before us in *Feldman* and the court in *Birkner*: 'The pivotal distinction between the circumstances in *Marlin* . . . on one hand, and *Birkner* and *Feldman* on the other, is whether an actual or contemplated unlawful detainer action by a landlord (unquestionably a protected petitioning activity) merely "preceded" or "triggered" the tenant's lawsuit, or whether it was instead the "basis" or "cause" of that suit.' (*Clark, supra,* 170 Cal.App.4th at p. 1289.)" (*Delois, supra,* 177 Cal.App.4th at pp. 950–953, fns. omitted.)

This last sentence is explained by the trio of decisions that came from our Supreme Court in 2002. "[T]he mere fact an action was filed after protected activity took place does not mean it arose from that activity." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76-77.) " ' "[T]he act underlying the plaintiff's cause" or "the act which

12

forms the basis for the plaintiff's cause of action" must *itself* have been an act in furtherance of the right of petition or free speech.' (*Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66.) "[T]hat a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 89.)

Those are the cases that would apply to Moriarty's eleventh cause of action. They do not help Laramar.

In a similar fashion, Laramar then asserts, again conclusorily, that "Plaintiff's Second Cause of Action, which asserts a claim for 'Negligent Violation of Statutory Duty/Negligence Per Se' is expressly based on the eviction. After incorporating all of the previous fact allegations (Complaint, ¶ 68 [AA 17]), Plaintiff generally alleges that Laramar breached its duty of due care and violated statutory duties by 'violating certain housing, building and fire codes, local ordinances and state statutes.' (Complaint, ¶ 69 [AA 17].) But in the next paragraph, Plaintiff specifically pleads that 'Defendants violated their duty of care to Plaintiff and violated their statutory duties to Plaintiff *by failing to state just cause for the eviction of Plaintiff* or offer any relocation benefits as proscribed under San Francisco Administrative code §37.9C.' (Complaint, ¶ 70, emphasis added [AA 17].) This same allegation is subsequently incorporated into all of Plaintiff's remaining causes of action. (*See*, Complaint, ¶¶ 73, 82, 89, 95, 100, 104, 107, 123 and 128 [AA 18, 20, 21, 22, 23, 25].) Therefore, it is clear that this cause of action is based at least in part on protected conduct by the Defendants."

Then, Laramar goes on to discuss other causes of action, which Laramar describes this way: "[a]lthough disguised, [Moriarty's] other causes of action also arise from the same petitioning activity, and are also subject to the anti-SLAPP statute." The primary basis of Laramar's argument is that "all prior allegations" are incorporated in the complaint "(which includes his eviction from the unit.)" And so, Laramar sums up, "Thus, in material part, each of Plaintiff's causes of action is premised on the three day

13

notice, the prosecution of the Unlawful Detainer Action, and the eviction, which resulted in Plaintiff's permanent loss of possession of the unit." Simply saying something does not make it so. Laramar's strained reading of Moriarty's complaint is, simply, inaccurate.

Laramar places heavy reliance on *Wallace, supra,* 196 Cal.App.4th 1169, a case it cites four times in its opening brief, and which it describes in its reply as "on point." The reliance is misplaced. *Wallace* is distinguishable. To begin with, the anti-SLAPP motion in *Wallace* was directed at only two of 13 causes of action (*id.* at p. 1178), not the entire complaint as is Laramar's motion here. And the court found that the acts on which the challenged causes of action were "based" were protected activity. Beyond that, we find *Wallace* unpersuasive, especially as it does not even address *Delois, supra,* 177 Cal.App.4th 940, and dismisses *Clark* in conclusory fashion in a footnote. (*Wallace, supra,* 196 Cal.App.4th at p. 1192, fn. 10.)[2]

In sum, Laramar fails to demonstrate that Moriarty's cause of action for violation of section 37.9 of the San Francisco Administrative Code Chapter 37 (or any other cause of action) is based in whole or in part on an unlawful detainer default suit that is nowhere referenced in the complaint. Indeed, Laramar does not show that the unlawful detainer suit was even "incidental" to Moriarty's claims here. But even assuming it did, it would

---

[2] At four separate places in his respondent's brief Moriarty cites our opinion in *Chacon v. Litke* (2010) 181 Cal.App.4th 1234. While *Chacon* was not a SLAPP case, Moriarty argues its applicability here, as follows: "This court agrees that wrongful endeavors to recover possession of a rental unit in violation of enumerated grounds for eviction in a rent ordinance, '[o]n their face, these provisions create liability for a range of conduct that does not necessarily include filing a lawsuit to recover possession (such as service of an eviction notice with no intent to proceed to litigation, or constructive eviction by failure to provide heat), or that arise from a landlord's conduct after recovery of possession.' (*Chacon v. Litke, supra,* 181 Cal.App.4th at p. 1257, citing *Rental Housing Association of Northern Alameda County v. City of Oakland* (2009) 171 Cal.App.4th 741.) ¶ This Court has essentially found that a wrongful eviction does not necessarily include filing an unlawful detainer action . . . ." (Fns. omitted.)

Laramar ignores *Chacon* in its reply brief, not even mentioning it. This is bad enough in any event. It is especially so here, as counsel for Laramar was counsel for the losing party in *Chacon.*

still lose, based on the numerous cases that apply the rule that the anti-SLAPP statute does apply where any allegations of protected activity are only incidental to the thrust of the complaint. (*Dyer v. Childress, supra,* 147 Cal.App.4th at p. 1279.). Four illustrations should suffice.

*In re Episcopal Church Cases* (2009) 45 Cal.4th 467, which was a national church's action to recover parish property after the parish disaffiliated itself from national church, which disaffiliation was caused by protected activity related to a doctrinal dispute. Held: the case did not arise from such protected activity, as the gravamen or principal thrust of the action was a *property dispute*, not a dispute over religious doctrine or other protected activity. (*Id.* at pp. 477–478.)

*Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, where a seller of real property brought an action against the buyer, the city, and city officials for breach of contract, fraud, and related causes of action, in which some of the actions complained of related to defendants' conduct in obtaining and issuing permits. Held: the thrust of the action did not "arise" from these activities. (*Id.* at p. 799.)

*Marlin v. Aimco Venezia, LLC, supra,* 154 Cal.App.4th 154, where tenants brought a declaratory relief action after the landlord served them with notice under a statute (Govt. Code, section 7060 et seq.) that permits landlords to evict tenants under certain conditions, even if prohibited by local rent control ordinance—an action instituted in response to service of the notice, a protected activity. Held: the action did not "arise" from the protected activity, as the thrust of the action was whether the landlord could evict tenants. (*Id.* at pp. 160–161.)

*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, where plaintiff sued for declaratory relief to obtain a determination that defendant's conduct (involvement in protests) constituted breach of a settlement agreement. Held: not an anti-SLAPP suit. Although the conduct constituted an exercise of the constitutional right of free speech, the cause of action did not arise from that exercise, but rather from a controversy between the parties as to the scope of the settlement agreement. (*Id.* at p. 1308.)

Because we conclude that Laramar has not met its burden under the first step of the anti-SLAPP analysis, we do not reach step two.[3] That said, we have one observation on the subject based on Laramar's final argument that Moriarty's claims "are barred by the doctrines of claim and issue preclusion." The argument is as follows: "The Complaint in The Eviction alleged that Laramar had complied with all applicable requirements of the Rent Ordinance. [Citation.] As such, the issues raised in the complaint concerning possession were at issue in the eviction proceeding, and were accordingly adjudicated against Plaintiff when the court entered a judgment for possession against him." We are nonplussed.

As noted above, Moriarty moved to set aside the default entered in the unlawful detainer action, hearing on which was held on May 2, 2012. Laramar Urban Specialty Partners, the plaintiff in the unlawful detainer case, was represented by Mr. Dowling, Moriarty by Eric Lifschitz. Mr. Lifschitz expressed his concern that if the default were not set aside there might be a preclusive effect on Moriarty at a later date, a concern that from all indications also bothered the trial court. Mr. Dowling alleviated the concern. This was the colloquy:

"THE COURT: How do you comment on the other statements made by other counsel which related to even if the Court were to say you can't get possession because this is a U.D. and possession is not the issue, at least want the judgment modified in this instance here to set forth what happened? I guess something to that extent so that, you heard, you can't use it against them in whatever they are going to do.

"MR. DOWLING: I don't know there is any collateral affect. Certainly no issue preclusion because nothing was litigated, where we have a default judgment here. There is nothing litigated. There was no evidence put before the Court so no fact issues got decided. In terms of claim preclusion, only seems to operate against my client. No

---

[3] Relevant to the issue on step two, Moriarty filed a request for judicial notice, which was opposed, and by order of July 10, 2013, we said the request would be decided with the merits of the appeal. We now deny the request.

16

cross-complaints are permitted in U.D., so not as if he could assert any affirmative complaints that he was going to use."

In any event, the argument that the judgment entered on Moriarty's default in the unlawful detainer action proves that his "claims are barred by the doctrines of claim and issue preclusion" is wrong. The sole issue in an unlawful detainer action is possession of the premises. (*Cheney v. Trauzettel* (1937) 9 Cal.2d 158, 159; *Berry v. Society of Saint Pius X* (1999) 69 Cal.App.4th 354, 363.) The range of Moriarty's claims is, as already shown, far wider than that.

**DISPOSITION**

The order is affirmed.


+_____
Richman, J.


We concur:


_____
Haerle, Acting P.J.


_____
Brick, J.[*]

_____

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 2/26/14

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JOHN MORIARTY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LARAMAR MANAGEMENT<br>CORPORATION,<br><br>    Defendant and Appellant. | A137608<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-12-520970)<br><br>**ORDER CERTIFYING OPINION<br>FOR PUBLICATION** |

**THE COURT:**

The opinion in the above-entitled matter filed on January 29, 2014, was not certified for publication in the Official Reports. For good cause appearing and pursuant to California Rules of Court, rule 8.1105, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports.


Dated: _____                    _____

                                                        Haerle, Acting P.J.

1

Trial Court: Superior Court of the City and County of San Francisco

Trial Judge: Honorable Ronald Evans Quidachay

Attorney for Plaintiff and Respondent: Law Offices of Eric L. Lifschitz, Eric L. Lifschitz, Aaron H. Darsky, and Maria C. Williams

Attorneys for Defendant and Appellant: Lewis Brisbois Bisgaard & Smith, Michael Kenneth Johnson and William F. Horsey