Filed 6/2/16  Edwards v. Edwards CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOHN S. EDWARDS,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>ARIEL EDWARDS,<br><br>　　　　Defendant and Appellant. | A145565<br><br>(San Francisco County<br>Super. Ct. No. CGC15544039) |

　　　　This is a lawsuit by plaintiff John Edwards (plaintiff) against his daughter, defendant Ariel Edwards (defendant).

　　　　Plaintiff was the owner, incorporator, and sole shareholder of a closely held California corporation, which he incorporated in 2006 (the corporation).  In March 2013, plaintiff assigned his shares of the corporation to defendant.  In February 2015, plaintiff sued defendant, seeking to rescind the assignment and for other relief.  The complaint contained nine causes of action, including that the assignment was an incomplete gift, lacked consideration, was vitiated by duress and menace, and was void due to fraud.  The complaint also alleged claims for securities fraud under the California Corporations Code, for financial elder abuse, and for an accounting.

　　　　Defendant filed an anti-SLAPP motion claiming that the lawsuit arose from protected activity, specifically a report to Children's Protective Services—a report nowhere mentioned in plaintiff's 20-page complaint.  The trial court denied the motion on the basis that defendant's motion "does not satisfy the first prong of CCP 425.16 that plaintiff's causes of action are based on petitioning activity.  The gravamen of plaintiff's

1

claims is that the plaintiff was tricked out of his property." We reach the same conclusion, and we affirm.

## BACKGROUND

### The Complaint

In February 2015, plaintiff filed a verified complaint for damages. Plaintiff alleged that he is the owner, incorporator, and sole shareholder of Woodside International School, Inc., a closely held California corporation (the school) that he incorporated in 2006; that in 2013 he executed an assignment of his shares to defendant, in connection with which defendant promised certain payments to plaintiff; that plaintiff was also induced to resign as headmaster of the school and appointed defendant to that position; that plaintiff did not receive the promised payments; and that it was all done as a result of planned wrongdoing by defendant, specifically this:

"10. In March 2013, in the course and scope of a conspiracy to take plaintiff's property by means of the overt acts of trickery, frauds, and falsities, . . . defendants in San Francisco induced plaintiff to execute a document entitled an 'Assignment' (herein the 'Assignment') which purported to assign 100 shares of uncertificated stock owned by plaintiff in the Corporation to Ariel D. Edwards as a gift under threat of exposure of false accusations which would cause plaintiff extreme embarrassment and humiliation. In the conspiracy, Ariel D. Edwards and Defendants Does 1 through 10, inclusive, were motivated by a desire to inflict harm on plaintiff, to take plaintiff's property from him, and to appropriate plaintiff's property and the future income from that property to themselves and to Defendant Ariel D. Edwards (herein the 'Conspiracy').

"11. In furtherance of the Conspiracy, in 2013, Defendants Does 1 through 10, inclusive, and persons unknown made false allegations to authorities, asserting that plaintiff had engaged in improper conduct. These allegations were not truthful. Ariel D. Edwards had knowledge of the falsity of the allegations against plaintiff and had knowledge that plaintiff was innocent of the allegations, and whether or not Ariel D. Edwards or her coconspirators directly or indirectly were responsible for the allegations, defendants unlawfully used the threat of their impact on plaintiff, on the School and the

2

Corporation, and on the lines of credit and debts incurred in plaintiff's name alleged below, to induce plaintiff to sign the Assignment."

The next paragraph described in vivid detail a witness who overheard defendant and another person—plaintiff's ex-wife—discussing a "scheme to have plaintiff 'put under investigation [for improper conduct] . . . , which would discredit the School, and he would have to turn it over to her [Ariel D. Edwards] under pressure, then they [Unnamed Coconspirator Number 1 and Ariel D. Edwards] would have full control.' " And the next paragraph alleged this:

"13. In the weeks prior to March 18, 2013, Ariel D. Edwards and Defendants Does 1 through 10, inclusive, in furtherance of the Conspiracy, planned to defraud plaintiff by inducing him to transfer his ownership of the Corporation to Ariel D. Edwards, by asserting that plaintiff would be publicly exposed for improper conduct. The allegations of improper conduct were false. As plaintiff was then Headmaster, Defendant Ariel D. Edwards threatened plaintiff that, if he remained associated with the School, the reputation of the School would be irreparably damaged due to the (false) allegations of misconduct and that the School would be ruined. In turn, the Corporation would become worthless and unable to pay the lines of credit, other operating debts, credit card balances, and lease payments (all of which obligations were in plaintiff's individual capacity as obligor or were guaranteed by plaintiff individually). Other than payments from the income generated by the School, plaintiff did not have sufficient income to cover these obligations. Defendants knew this and knew that plaintiff was financially vulnerable and emotionally vulnerable and exploited plaintiff's vulnerability to induce plaintiff to execute the Assignment."

Those paragraphs and more were incorporated into the causes of action thereafter alleged. The causes of action were nine in number, the first five of which sought to set aside the assignment, styled as follows: (1) declaratory relief; (2) rescission, as an incomplete gift; (3) rescission, for failure of consideration; (4) rescission, as consent vitiated by duress and menace; and (5) for damages and a determination that the assignment is void due to fraud by trick, device, and concealment. The sixth cause of

3

action was for securities fraud, the seventh for financial elder abuse, the eighth for an accounting, and the ninth for injunctive relief.

The prayer asked for a declaration that the assignment is void and be rescinded; that plaintiff be declared the rightful owner of the shares; for an accounting; and for special, general, and punitive damages.

## The Anti-SLAPP Motion

Defendant filed a special motion to strike pursuant to Code of Civil Procedure section 425.16 (anti-SLAPP motion).[1]  The motion was accompanied by two declarations, one from defendant and one from Lina Lenberg, a teacher at the school.  As pertinent here, both declarations testified to Lenberg making a telephone report to Child Protective Services (CPS) that plaintiff was "sleeping in the same bed with" a twelve-year-old girl from Guyana, a fact Lenberg had learned from defendant.  The declarations both testified to CPS going to plaintiff's house and removing the child.

The memorandum in support of the anti-SLAPP motion made no distinction between or among any of plaintiff's causes of action, its argument being as follows:

"ALL THE PLAINTIFF'S CAUSES OF ACTION ARISE FROM THE REPORT TO CPS.

"Plaintiff's causes of action all incorporate the allegation that he was induced by threats of exposure to government authorities and by the subsequent false reports to the government authority to assign his ownership in the school to Ariel Edwards as a gift. Without this allegation the plaintiff is left with the fact that he assigned his ownership willingly and therefore all causes of action in this suit would fail.  The allegation that the report to the CPS was false and was intended to pressure him into relinquishing his ownership is crucial to his complaint.  He either willingly gifted the ownership in the corporation to his daughter or he did not, and the determination of what he actually did is predicated on whether or not the report to the CPS was false and was part of a scheme to induce him to assign his shares.  If the report was true and warranted by events other than

_____

[1] All undesignated statutory references are to the Code of Civil Procedure.

4

the alleged scheme to deceive, then the Plaintiff was not deceived into assigning his shares and he did so knowingly and willingly. The latter being the case the Plaintiff has no basis for any of his causes of action against the Defendant."

And, the argument ran, the report of the behavior to CPS was squarely within the anti-SLAPP statute as a report to the government, and defendants, as mandated reporters, had absolute immunity from liability. (See Penal Code section 11172.)

Plaintiff filed extensive opposition, including his own 71-paragraph declaration that among other things testified that the 12-year-old girl was returned to him by CPS, whose investigation turned up nothing—and whose investigator apologized to plaintiff. Plaintiff's opposition also included a declaration of Joanne Wysong, the sister of plaintiff's ex-wife Janet, who gave vivid—and riveting—testimony about conversations she overheard Janet having with defendant in 2012. Wysong's testimony included the following:

"7. At least six times in these conversations the discussion between Ariel and Janet concerned accusing John of pedophilia to get control of the school and the money it could generate. In these conversations in my home, Janet discussed with Ariel that around year end 2012 John was going to return from Guyana and would be bringing a poor young girl . . . to the United States to attend Woodside International School . . . . While in school, the minor was to live in John's home in San Francisco.

"8. In these calls, Janet also referred to the minor as 'John's foster daughter.'

"9. In these telephone conversations, Janet (and Ariel) discussed having John investigated as a 'pedophile' in order to bring discredit on John and the school. They discussed that, to save the school, John would have to withdraw from the school and would have to turn the school over to Ariel out of concern for the school's reputation. Janet stated that, once that was done, they would have full control of the school and its revenue.

"10. During these calls in my home, Janet told Ariel that Ariel should engage John in conversation, inducing John to describe activities which would implicate John as a 'pedophile,' such as 'showering with her.' . . .

5

"11. During these calls, Janet and Ariel discussed timing the reporting of John as a pedophile to the authorities."

Defendant filed a reply, including objections to much of plaintiff's evidence.

The motion came on for hearing before Honorable Harold Kahn, an experienced law and motion judge, who had issued a tentative ruling favorable to plaintiff. Defendant contested the ruling, and Judge Kahn heard argument, engaging in colloquy with defendant's counsel. At the end of the hearing Judge Kahn ruled that the tentative would be affirmed, and thereafter filed his order denying the motion, as follows:

"The motion does not satisfy the first prong of CCP 425.16 that plaintiff's causes of action are based on petitioning activity. The gravamen of plaintiff's claims is that the plaintiff was tricked out of his property. Plaintiff is not seeking damages based on the reports to CPS. The fact that protected activity may be lurking in the background of the parties' dispute does not transform this property dispute case into a SLAPP suit. (*In re Episcopal Church Cases* (2009) 45 Cal.4th 467, 477-78; *Renewable Resources Coalition, Inc. v. Pebble Mines* (2013) 218 Cal.App.4th 384.)"

Defendant appealed.

### Anti-SLAPP Law and the Standard of Review

We explained the operation of section 425.16 in both the trial and reviewing courts in *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 463–464:

"Subdivision (b)(1) of section 425.16 provides that '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' Subdivision (e) of section 425.16 elaborates the four types of acts within the ambit of a SLAPP . . . ."

"A two-step process is used for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the

6

challenged cause of action is one arising from protected activity, that is, by demonstrating that the facts underlying the plaintiff's complaint fit one of the categories spelled out in section 425.16, subdivision (e). If the court finds that such a showing has been made, it must then determine the second step, whether the plaintiff has demonstrated a probability of prevailing on the claim. [Citation.]

"'The Legislature enacted section 425.16 to prevent and deter "lawsuits [referred to as SLAPP's] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."' (§425.16, subd. (a).) Because these meritless lawsuits seek to deplete "the defendant's energy" and drain "his or her resources" [citation], the Legislature sought "'to prevent SLAPPs by ending them early and without great cost to the SLAPP target'" [citation]. Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation.' [Citation.]

"Finally, and as subdivision (a) of section 425.16 expressly mandates, the section 'shall be construed broadly.'

"With these principles in mind, we turn to a review of the issues before us, a review that is de novo. [Citation.]"[2]

## Plaintiff's Complaint Is Not Subject to the Anti-SLAPP Statute As It Is Not Based on Protected Activity

As indicated above, Judge Kahn concluded that defendant had failed to meet her burden under the first step of the anti-SLAPP analysis, failing to demonstrate that plaintiff's complaint was based on protected activity. We reach the same conclusion.

The mere fact that a plaintiff has filed an action after a defendant has engaged in some protected activity does not mean that the action arose from that activity. "The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under

---

[2] Though plaintiff filed vigorous opposition below, he has filed no respondent's brief, but rather "elects to *decline* to file an Opposition Brief under" California Rules of Court, rule 8.220(a)(2).

section 425.16 . . . .' [Citations.] " (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77.) As the Supreme Court put it in another case, "the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).) So, as *Navellier* concluded, in order for a complaint to be within the anti-SLAPP statute, the "critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity." (*Ibid.*) To make that determination, we look to the "principal thrust or gravamen of the plaintiff's cause of action." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188, italics omitted; see *Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1279.)

Much of the law applicable here was described in our opinion in *Moriarty v. Laramar Management Corp.* (2014) 224 Cal.App.4th 125 (*Moriarty*), a case in which we affirmed denial of an anti-SLAPP motion. There, after setting out verbatim the defendant's argument, we summarized defendant's position as follows: "In short, with disregard of the pertinent principles or cases—and on a strained, myopic reading of Moriarty's complaint—Laramar focuses on a few words in a few paragraphs (of 139) and from there argues, however conclusorily, that the complaint is within the SLAPP statute." (*Id.* at p. 135.) The same is a fortiori applicable to defendant's position here.

The thrust or gravamen of plaintiff's complaint here is, just as Judge Kahn concluded, a property dispute. The complaint seeks rescission of an assignment of shares in a corporation—property. The complaint seeks damages for the loss of property, and a determination whether the assignment of the school was invalid on any of several bases. And defendant's retention of plaintiff's property, and her cancellation of plaintiff's payments, were claimed to be financial elder abuse. In short, the injuries sued on concern property. This is a property dispute, not a claim based on protected petitioning activity, just as in one of the cases cited by Judge Kahn: *In re Episcopal Church Cases, supra,* 45 Cal.4th 467 (*Episcopal Church*).

8

*Episcopal Church* involved a national church's action to recover parish property after the parish disaffiliated itself from the national church, a disaffiliation that was caused by protected activity related to a doctrinal dispute. The Supreme Court affirmed that the case did not come within the anti-SLAPP statute, as the case did not arise from a dispute over religious doctrine or other protected activity. Rather, " 'the gravamen or principal thrust' of the action" was a "*property dispute*." (*Episcopal Church, supra,* 45 Cal.4th. at pp. 477–478.)

*Renewable Resources Coalition, Inc. v. Pebble Mines Corporation, supra,* 218 Cal.App.4th 384, one of the other cases relied on by Judge Kahn, is also persuasive. There, an environmental organization sued two mining companies and their attorneys for interference with contract and prospective economic advantage. The organization had hired a professional fundraiser to seek donations from its supporters for a clean water ballot initiative that would have impeded or blocked a mining project. The initiative failed, and the mining companies filed a complaint with a public agency charging that the environmental organization had violated campaign finance laws. The agency conducted enforcement proceedings. The organization's lawsuit alleged that the mining companies and their attorneys had wrongfully purchased confidential documents from the organization's fundraiser, knowing the documents to be confidential. (*Ibid.*)

The trial court granted defendant's anti-SLAPP motion. The Court of Appeal reversed, holding as follows: "The Pebble defendants' attempts to bring their conduct within the ambit of the anti-SLAPP statute are unavailing. Although the Pebble defendants rely on their bringing the APOC complaint as protected activity for SLAPP purposes, the Coalition did not sue the Pebble defendants for having prosecuted the APOC complaint. Rather, as discussed, the pleadings establish the gravamen of the Coalition's claim against the Pebble defendants is that they induced Kaplan to sell them the Coalition's confidential documents for $50,000." [¶] . . . [¶]

"A fair reading of the Coalition's complaint is that the Pebble defendants were being sued for wrongfully purchasing the Coalition's confidential documents from Kaplan, not for prosecuting the APOC complaint. The Pebble defendants' purchase of

9

the Coalition's confidential documents from Kaplan does not amount to an exercise of the constitutionally protected right of petition or free speech. Given the nature of the Coalition's claims against the Pebble defendants, the claims were not subject to a special motion to strike under section 425.16. Therefore, the grant of the special motion to strike was error." (*Renewable Resources Coalition, Inc. v. Pebble Mines Corporation, supra,* 218 Cal.App.4th at pp. 397–398.)

Sprinkled throughout defendant's brief here are various statements, such as "Plaintiff would be unable to allege conspiracy without claiming 'false allegations to government authorities.' " This is simply wrong, as what plaintiff has alleged is that any report was "in furtherance of the [c]onspiracy."

At another point defendant makes the assertion that "The Plaintiff through selective pleading, seeks to have that report but not its effects or motive ignored as part of his opposition to the Defendant's motion to strike. The alleged weakened state of mind, which arises from the report to the CPS, was the cause of the Plaintiff's duress and menace, which in turn lead to his alleged lack of intent to gift his property to the [*sic*] Ariel D. Edwards. The essence of his case arises from the report. The report was the cause of the alleged 'fog' which caused to him [*sic*] act in a manner than he otherwise would have acted. [Citation.] The report is an integral part of his claims; it gives rise to those claims." Footnote 3 says this: "It is inconceivable that the Plaintiff will ignore the Defendant's allegedly false allegations (which they were not), their intent, and the consequences of their actions in proving his case in trial. They give rise to his whole action."

Hyperbole aside, one reads the statements as suggesting that the report to CPS will be used by plaintiff as part of the proof of his case, as evidence. Maybe so. But that does not avail defendant, as illustrated, for example, by *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, where Gallimore brought an action as a private Attorney General against an insurer (and some of its employees) alleging claims mishandling in violation of Business and Professions Code section 17200. Defendants brought an anti-SLAPP motion, on the basis plaintiff's allegations were based upon, and

10

arose from, confidential written reports and related materials defendants had filed with the Department of Insurance (DOI). The trial court granted the motion. The Court of Appeal reversed, in language strikingly applicable here:

"In the case before us, the DOI report may have similarly 'triggered' plaintiff's action, but that action did not 'arise from' such report nor from any communication by State Farm to the DOI in connection therewith.

"As plaintiff exhaustively argues, his complaint alleges that State Farm engaged in certain claims handling misconduct and violated a number of statutory and regulatory rules. He seeks, on behalf of the general public, to call State Farm to task for *that conduct*. Plaintiff seeks no recovery from State Farm for State Farm's activity in *communicating information* to DOI, nor does he allege that any such communication was wrongful or the cause of any injury to him. The allegations that State Farm engaged in claims handling misconduct do not charge an act that State Farm could or would argue was done by it 'in furtherance of' its petition or free speech rights.

"We thus conclude that the alleged wrongful acts of State Farm were not done in furtherance of any claimed right of petition or free speech. Indeed, State Farm does not really claim otherwise. It argues instead that plaintiff is alleging that State Farm's communications to DOI (which allegedly contained or constitute *evidence* of such wrongdoing) were protected communications, and to allow plaintiff to rely on them to prosecute this action would effectively interfere with State Farm's right to freely communicate with its regulatory agency. We reject this argument out of hand. This contention confuses State Farm's allegedly *wrongful acts* with the *evidence* that plaintiff will need to prove such misconduct." (*Gallimore v. State Farm Fire & Casualty Ins. Co., supra,* 102 Cal.App.4th at p. 1399.)

*Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC.* (2007) 154 Cal.App.4th 1273 is similar. There, the landlord decided to remove an apartment building from the rental market. One of the tenants asserted she had a disability and asked for an accommodation for additional time to find alternate housing. A dispute arose and the landlord had the tenant removed by unlawful detainer

11

proceedings. (*Id.* at pp. 1279–1280.) The DFEH sued for disability discrimination. The landlord filed an anti-SLAPP motion, asserting that the complaint was based on protected activity, specifically the communications it made during (1) the rent control removal proceeding and (2) the unlawful detainer case. (*Id.* at p. 1283.) The trial court denied the motion, and the Court of Appeal affirmed, holding as follows:

"Contrary to Alta Loma's argument, the communications and the actual eviction itself were not the acts attacked in DFEH's complaint. Instead, the allegations of wrongdoing in DFEH's complaint arose from Alta Loma's alleged acts of failing to accommodate Mangine's disability. The letters, e-mail and filing of unlawful detainer actions constituted DFEH's *evidence* of Alta Loma's alleged disability discrimination. In other words, DFEH might well have filed the same lawsuit had Alta Loma simply ignored Mangine's claim of disability and requests for extension of her tenancy without any communication from it at all and simply filed a complaint for unlawful detainer." *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC, supra,* at pp. 1284–1285.)

Even assuming that defendant has shown that the CPS report was "incidental" to plaintiff's claims here, it would not matter, as *Moriarty* again makes clear. As we said there, defendant "would still lose, based on the numerous cases that apply the rule that the anti-SLAPP statute does not apply where any allegations of protected activity are only incidental to the thrust of the complaint. (*Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1279.) [Three] illustrations should suffice. [¶] . . . [¶]

"*Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, where a seller of real property brought an action against the buyer, the city, and city officials for breach of contract, fraud, and related causes of action, in which some of the actions complained of related to defendants' conduct in obtaining and issuing permits. Held: the thrust of the action did not 'arise' from these activities. (*Id.* at p. 799.)

"*Marlin v. Aimco Venezia, LLC, supra,* 154 Cal.App.4th 154, where tenants brought a declaratory relief action after the landlord served them with notice under a statute (Gov. Code, §7060 et seq.) that permits landlords to evict tenants under certain

12

conditions, even if prohibited by local rent control ordinance—an action instituted in response to service of the notice, a protected activity.  Held:  the action did not 'arise' from the protected activity, as the thrust of the action was whether the landlord could evict tenants.  (*Id.* at pp. 160–161.)

"*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, where the plaintiff sued for declaratory relief to obtain a determination that the defendant's conduct (involvement in protests) constituted breach of a settlement agreement.  Held:  not an anti-SLAPP suit.  Although the conduct constituted an exercise of the constitutional right of free speech, the cause of action did not arise from that exercise, but rather from a controversy between the parties as to the scope of the settlement agreement. (*Id.* at p. 1308.)"  (*Moriarty, supra*, 224 Cal.App.4th at pp. 139–140.)

## DISPOSITION

The order is affirmed.  Plaintiff shall recover his costs on appeal.

_____

Richman, Acting P.J.

We concur:


_____

Stewart, J.


_____

Miller, J.

A145565; *Edwards v. Edwards*