Filed 6/16/25  Wald v. Martin CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JAMES WALD et al.,<br><br>    Plaintiffs, Cross-Defendants and Respondents,<br><br>v.<br><br>TRAVIS EDWARD MARTIN,<br><br>    Defendant, Cross-Complainant and Appellant. | 2d Civ. No. B335960<br>(Cons. w/ B340328)<br>(Super. Ct. No. 2023CUPP012195)<br>(Ventura County) |

Travis Edward Martin appeals an order granting a special motion to strike his cross-complaint pursuant to the anti-SLAPP statute (Code Civ. Proc.,[1] § 425.16).  Appellant also challenges an award of attorney fees and costs.

---

    [1] Undesignated statutory references are to the Code of Civil Procedure.

We will reverse the order granting the anti-SLAPP motion as to the menacing-duress cause of action. Accordingly, we will also reverse the order awarding attorney fees and costs. On remand, the trial court will determine whether respondents are entitled to attorney fees and costs in connection with their anti-SLAPP motion and on appeal and, if so, in what amount.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2022, a jury convicted appellant of seven counts of lewd acts upon a child, P.W. (Pen. Code, § 288, subd. (a)), as well as one count each of using a minor for sex acts (*id.*, § 311.4, subd. (c)) and possession of child pornography (*id.*, § 311.11, subd. (a)). The court sentenced him to a total prison term of 610 years to life. Subsequently, P.W., her parents James and Natalie Wald[2], and a related corporation filed a complaint alleging various causes of action related to appellant's criminal conduct and alleged "smear campaign" against the Walds. Appellant filed a cross-complaint against the Walds and P.W. alleging negligence, menacing-duress, conspiracy,[3] intentional infliction of emotional distress, and defamation.

As to negligence, appellant alleged the Walds knew appellant "was a registered sex offender for orally copulating a girl under 13." Nevertheless, they "would provide P.W. directly to [appellant] once or twice a week knowing she was alone with him for hours, sometimes all day." Appellant asserted the Walds

---

[2] We refer to James and Natalie collectively as "the Walds." Due to their shared surname, for clarity we refer to each individually by their first name.

[3] Appellant does not challenge the court's striking of the conspiracy cause of action. Thus, we do not address it.

owed him a duty of care and "failed to take reasonable steps to implement safeguards to protect [him] from being accused of sexual assault. Without the means and opportunity of alone time directly provided by [the Walds], accusations of abuse wouldn't have been possible." Appellant claimed that because of this negligence, he "has been sentenced to life in prison, suffering physical, emotional and financial damage."

Appellant asserted "MENACING-DURESS" based on Natalie's use of "threats, intimidation and blackmail to extort monetary compensation from [him]." Appellant alleged Natalie "used her detailed knowledge" about his prior conviction and fear of returning to prison "to force [him] to pay her children's private school tuition and finance her lavish lifestyle . . . ." Appellant sought "recovery of all funds paid and laid out under duress and menace by Natalie Wald according to proof."

Regarding intentional infliction of emotional distress, appellant alleged Natalie "for years used the looming threat of prison to emotionally abuse" him. Appellant claimed he "lived in a constant state of fear from the threat Natalie would call the police on him." He further alleged the Walds "for the purposes of pure selfish greed sent [appellant] to prison so they could get complete control of the company from [him]. Life time [sic] loss of liberty and loss of relationships is the ultimate intentional emotional abuse."

As to defamation, appellant alleged the Walds and P.W. "have publicly slandered [him] stating as fact that he sexually molested P.W." Appellant also claimed he "was libelled [sic] in statements he raped and sodomized P.W. This statement was sent in a letter to [appellant's] friends" to disrupt his friendships.

Appellant alleged his criminal case lacked "a single allegation, charge, or conviction of penetration . . . ."

The Walds and P.W. filed a motion to strike the cross-complaint pursuant to the anti-SLAPP statute (§ 425.16). The trial court granted the motion. The court later awarded attorney fees and costs totaling $14,037.27. (§ 425.16, subd. (c).)

DISCUSSION

*General Legal Principles*

The anti-SLAPP (strategic lawsuit against public participation) statute "authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*); § 425.16, subd. (b)(1).)

By statute, such acts in furtherance include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of

4

establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) "A defendant satisfies the first step of the analysis by demonstrating that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16]' [citation], and that the plaintiff's claims in fact *arise* from that conduct." (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620.) "'If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least "minimal merit."' [Citation.] If the plaintiff fails to meet that burden, the court will strike the claim." (*Wilson*, *supra*, 7 Cal.5th at p. 884.)

We review de novo the trial court's ruling on the anti-SLAPP motion. (*Doe v. Ledor* (2023) 97 Cal.App.5th 731, 741.)

*Mixed Causes of Action*

A so-called "'"mixed cause of action"'" . . . rests on allegations of multiple acts, some of which constitute protected activity and some of which do not." (*Bonni v. St. Joesph Health System* (2021) 11 Cal.5th 995, 1010.) Courts should not attempt to ascertain the "essence or gist of a so-called mixed cause of action . . . ." (*Id.* at p. 1012.) Instead, they "should analyze each claim for relief— each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected . . . ." (*Id.* at p. 1010.) But "[a]ssertions that are 'merely incidental' or 'collateral' are not subject to section 425.16. [Citations.] Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 394.)

"In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park*, *supra*, 2 Cal.5th at p. 1063.)

*Negligence*

"To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that [the defendant] breached that duty, and that the breach was the proximate or legal cause of the resulting injury.'" (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213.)

In his cross-complaint, appellant alleged negligence based on the Walds' sending P.W. to be alone with appellant, a registered sex offender. This conduct, by itself, does not appear to constitute protected activity under section 425.16, subdivision (e) (§ 425.16(e)). However, the cross-complaint implicitly framed the duty and breach in terms of sexual assault accusations. The cross-complaint alleged the Walds failed to take reasonable steps "to protect [appellant] from being accused of sexual assault." Similarly, it indicated the "accusations of abuse" would not have been possible without the Walds' conduct—in other words, that the Walds' conduct caused the accusations. But accusations of abuse from the Walds and P.W.—both to law enforcement and at trial—fall squarely within section 425.16(e). Those accusations were not incidental to the negligence claim. Accordingly, this cause of action arises from protected activity.

Appellant offers no substantive argument as to the anti-SLAPP analysis's second step for any of his claims. Therefore, he has forfeited any argument his claims have minimal merit under the second step. (See *In re Marriage of Carlisle* (2021) 60 Cal.App.5th 244, 255; Cal. Rules of Court, rule 8.204(a)(1).)

*Menacing-Duress*

"Civil Code sections 1566, 1567, and 1570 establish a right to rescission in cases in which a person's consent to a transaction was obtained by 'menace':  threats of confinement, of unlawful violence to the person or his or her property, or of injury to a person's character.  This is effectively the civil version of extortion." (*Tran v. Nguyen* (2023) 97 Cal.App.5th 523, 525 (*Tran*).)  Although appellant denominates this cause of action as menacing-duress rather than simply menace, section 425.16's application does not depend on such labels.  (See *Moriarity v. Laramar Management Corp.* (2014) 224 Cal.App.4th 125, 133.)

Respondents have failed to carry their first-step burden of demonstrating the activity underlying this claim "is protected by the anti-SLAPP statute."  (*Wilson, supra*, 7 Cal.5th at p. 884.)  This claim is based on Natalie allegedly threatening to report appellant's misconduct to extract money from him.  Such de facto "threats of imprisonment . . . in effect . . . necessarily [would be] threats of injury to the character of [appellant], and consequently a menace." (*Morill v. Nightingale* (1892) 93 Cal. 452, 456 (*Morill*); *Tran, supra*, 97 Cal.App.5th at pp. 530-531.)  Natalie's alleged statements were not made in an official proceeding, in connection with an issue then under official review, or publicly.  Nor do the alleged statements fall within section 425.16(e)(4)'s catchall.

Our Supreme Court has articulated a two-step inquiry for that catchall provision:  "'First, we ask what "public issue or . . . issue of public interest"' is implicated by the challenged activity. [Citation.]  Second, we look to the 'functional relationship' between the challenged activity and the public issue it implicates, and ask whether the activity contributed to public discussion of

7

that issue." (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1246 (*Geiser*); *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149-150 (*FilmOn*).) Courts must consider both content and context. (*FilmOn*, at p. 149.) Contextual factors include "the identity of the speakers or participants," the "location and audience," and the "purpose and timing." (*Geiser*, at p. 1253.) In certain cases, "it may be more efficient to look to the whole context from which the conduct underlying the lawsuit arises, rather than attempting to parse which considerations fall under which of *FilmOn*'s two steps." (*Id.* at p. 1256.)

Here, the alleged statements underlying the menace claim essentially functioned as a promise *not* to speak publicly in exchange for money. The alleged statements did not contribute to or participate in a public discourse. Respondents' attempts to relegate or discount this claim's fundamental extortionary character are unavailing. The menace claim does not arise from activity the anti-SLAPP statute protects.

Natalie's subsequent report to law enforcement, which qualifies as protected activity, does not propagate backward in time to bring the alleged menace within section 425.16(e). Moreover, "[u]nder that kind of menace which consists in a threat of injury to the character of a person, it is entirely immaterial whether such person is guilty or innocent of the crime to be charged." (*Morill, supra*, 93 Cal. at p. 456.) And although the cross-complaint relays a portion of Natalie's testimony, that testimony was "just evidence of liability" and not itself "the wrong complained of . . . ." (*Park, supra*, 2 Cal.5th at p. 1060.)

Appellant mistakenly relies upon *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*), where the Court concluded the anti-SLAPP statute did not apply because the communications at

issue "constituted criminal extortion as a matter of law . . . ." (*Id.* at p. 305.)  But "the *Flatley* exception applies only in 'narrow circumstance[s]' where 'either the defendant concedes, or the evidence conclusively establishes' illegality as a matter of law." (*Flickinger v. Finwall* (2022) 85 Cal.App.5th 822, 832.)  "'If . . . a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits.'" (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 424; see also *Flatley*, at p. 316.)

Here, no concession exists, and the evidence does not conclusively establish extortion as a matter of law.  The evidence consists of little more than appellant's claim that extortion occurred.  Natalie did not concede to extortion merely by submitting a declaration with an attached letter, purportedly sent by appellant, that accused Natalie of allowing abuse to occur in exchange for financial benefit.

Although the *Flatley* exception does not apply, respondents have not satisfied their burden at the first step of the anti-SLAPP analysis.  Thus, we need not proceed to the second.  The trial court erred in striking this claim under the anti-SLAPP statute.

*Intentional Infliction of Emotional Distress (IIED)*

The elements of IIED are:  "'"(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . .""'" (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.)

The IIED cause of action arises from protected speech. First, appellant claimed Natalie "used the looming threat of prison to emotionally abuse [him]," and that he "lived in a constant state of fear from the threat Natalie would call the police on him." However, Natalie's report to law enforcement regarding appellant's sexual abuse of her daughter falls within section 425.16(e). (See *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1569.) Unlike the menace claim, this IIED claim does not hinge on monetary extortion. The prospect of prison due to Natalie's report supplied the alleged distress. Given that we must construe section 425.16 broadly (§ 425.16, subd. (a)), we decline to separate Natalie's report from its antecedent, non-menacing communications putting appellant in fear of his own actions' consequences. (*Flatley*, *supra*, 39 Cal.4th at p. 322, fn. 11 [""communications preparatory to or in anticipation of bringing an action or other official proceeding" are protected by section 425.16"].) Far from being incidental, Natalie's report to law enforcement is inextricably linked with this claim.

Second, appellant claimed the Walds out of "pure selfish greed sent [him] to prison so they could get complete control of the company from [him]. Life time [sic] loss of liberty and loss of relationships is the ultimate intentional emotional abuse." This discrete claim arises from the protected conduct of reporting to law enforcement or testifying. (Cf. *Wilson*, *supra*, 7 Cal.5th at p. 892 ["If conduct that supplies a necessary element of a claim is protected, the defendant's burden at the first step of the anti-SLAPP analysis has been carried, regardless of any alleged motivations that supply other elements of the claim"].)

Finally, for reasons already discussed, the *Flatley* exception does not apply to appellant's IIED cause of action.

*Defamation*

The elements of defamation are "'"(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage."'" (*Sanchez v. Bezos* (2022) 80 Cal.App.5th 750, 763.)

Appellant's defamation cause of action appears to raise two distinct claims. First, appellant alleged: "On information and belief James Wald, Natalie Wald and P.W. have publicly slandered [appellant] stating as fact that he sexually molested P.W." While appellant does not specify the forum, this claim fairly implicates reports to law enforcement and court testimony, both of which fall within section 425.16(e).

Second, appellant alleged libel based on a letter stating he raped and sodomized P.W. Appellant asserted the letter was sent to his friends to disrupt his friendships. The cross-complaint dates the defamation cause of action on July 5, 2023—months after appellant was convicted and sentenced. We conclude this claim comes within section 425.16(e)(4)'s catchall.

"We are not concerned with . . . the degree to which [the speech] propelled the conversation in any particular direction; rather, we examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." (*FilmOn*, *supra*, 7 Cal.5th at p. 151.) By advising appellant's friends of his purported sexual misconduct with a child, the alleged letter participated in and furthered the discourse regarding the significant public issues of "preventing child sexual abuse and protecting children from sexual predators . . . ." (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 375.) While appellant was then incarcerated, the possibility of future release and recidivism still

11

existed. Moreover, incarceration does not always prevent communication, including of a sexually inappropriate nature.

Appellant cites perceived differences between the alleged letter's statements regarding rape and sodomy and the Walds' other statements, including trial testimony. While such disparities might be relevant to the merits of a defamation claim, they do not negate the protection of section 425.16 at the first step. The putative disparities are not uncontroverted evidence the alleged letter's statements are false. (Cf. *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 967 [controverted allegation of false report insufficient to eliminate protection of section 425.16].) Furthermore, as explained above, Natalie's declaration does not operate as a concession in the way appellant imagines.

*Amendment of Cross-Complaint*

Appellant contends the trial court abused its discretion in denying amendment of the cross-complaint. "'The absence of cogent legal argument or citation to authority allows this court to treat [a] contention[] as' forfeited." (*In re Marriage of Carlisle*, *supra*, 60 Cal.App.5th at p. 255.) In his appellate briefs, appellant cites no legal authority to support this contention. Nor does he provide cogent legal argument. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 165, fn. 6 ["'[A]n appellant is required to not only cite to valid legal authority, but also explain how it applies in his case.'"].) We treat this contention as forfeited.

Our decision does not prevent appellant from seeking to amend the menacing-duress cause of action on remand. We express no view on the merits of such a requested amendment.

12

*Fees and Costs*

Subject to statutory exceptions not relevant here, cross-defendants prevailing on anti-SLAPP motions "shall be entitled to recover . . . attorney's fees and costs," including those incurred on appeal.  (§ 425.16, subd. (c)(1); accord *Frym v. 601 Main Street LLC* (2022) 82 Cal.App.5th 613, 622.)  "'"[A] party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion.  The determination whether a party prevailed on an anti-SLAPP motion lies within the broad discretion of [the] trial court.'  [Citation.]"'" (*Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 605 (*Area 51*).)

"[A]s a general rule, a defendant who prevails in part in bringing a special motion to strike is entitled to fees and costs, subject to the trial court's determination of the appropriate amount awardable based upon the defendant's partial success." (*Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 232-233.)  Thus, we will reverse the order awarding attorney fees and costs.  The trial court will determine whether respondents are entitled to attorney fees and costs (including those incurred on appeal) and, if so, in what amount.  (Cf. *Area 51*, *supra*, 20 Cal.App.5th at p. 605 ["'"Although this court has the power to fix attorney fees on appeal, the better practice is to have the trial court determine such fees."'"]; *Capistrano Taxpayers Assn., Inc. v. City of San Juan Capistrano* (2015) 235 Cal.App.4th 1493, 1516-1517 [reserving appellate costs for future adjudication in trial court].)

## DISPOSITION

The trial court's order granting the anti-SLAPP motion is reversed as to the cause of action denominated "MENACING-DURESS." In all other respects, that order is affirmed.

The order awarding attorney fees and costs is reversed. On remand, the trial court will determine whether respondents are entitled to attorney fees and costs in connection with their anti-SLAPP motion and on appeal and, if so, in what amount.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.

We concur:

GILBERT, P. J.

BALTODANO, J.

14

Jeffrey G. Bennett, Judge
Superior Court County of Ventura

_____


Bamieh & De Smeth, Ron Bamieh, Danielle De Smeth, and Charlotte E. Krem, for Plaintiffs and Respondents.

TencerSherman, Philip C. Tencer, for Defendant and Appellant.